No. 28,428.

MARY MILLER KNOX, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STEVENS, *Appellee*.

(276 Pac. 84.)

Opinion filed April 6, 1929.

*H. W. Stubbs*, of Ulysses, *Robert Stone, James A. McClure, Robert L. Webb* and *Beryl R. Johnson*, all of Topeka, for the appellant.

*C. T. Parker, F. L. Dinsmore, W. E. Eddy*, all of Hugoton, and *Carl Van Riper*, of Dodge City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages resulting from an alleged defective highway. Defendant prevailed, and plaintiff appeals.

The facts are substantially these: On the night of November 1, 1926, the plaintiff was driving a Ford car on one of the main thoroughfares leading into Hugoton from the north. In attempting to turn from the highway on to a side road she missed the crossing (a fill) and drove the car into a ditch some fifteen feet wide and seven feet deep, which was adjacent to the roadway and within the highway, paralleling the grade. The car overturned and the plaintiff was pinned beneath it from nine o'clock in the evening until eight o'clock the following morning. She sustained a broken left arm and many minor cuts and bruises.

The highway in question is well graded with a smooth driving surface. Three or four miles north of Hugoton, where the accident occurred, a side road comes into it from the east. When the main highway was graded some years ago a ditch several feet deep was made and left along the east side of the roadway, now claimed to constitute the defect complained of. There was conflicting testi-

mony as to whether the side road was a county road or a state road. The jury found that the road at the scene of the accident was in a dangerous condition and that prior to November 1, 1926, no barrier, warning sign or danger signal had been placed near the ditch or the crossing. That there were weeds growing or grown along the ditch and within the highway immediately adjacent to and on each side of the crossing, but found for the defendant on the theory that the plaintiff was guilty of contributory negligence, charging "improper observance and poor control of car."

A pertinent statute reads in part:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided: . . .. when the chairman of the board of county commissioners of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained." (R. S. 68-301.)

The plaintiff contends that the negligence attempted to be found was not the contributory negligence pleaded and relied upon by defendant and that the negligence pleaded and relied upon was not supported by any testimony.

The answer contained this language:

"If any injuries as alleged in plaintiff's petition were sustained by the plaintiff, such injuries were caused by the reason of the want of care, carelessness and negligence of the plaintiff, for that the plaintiff was familiar with the condition of the automobile in which she was riding, and knew, or by the exercise of ordinary care and diligence should have known, that said automobile was old, worn and defective, and that the same would not respond with any degree of certainty to the demands of human agency, or reasonably comply with, or do and perform the purposes for which it was intended to be used, and that said automobile was not equipped with proper and adequate lighting system and was not equipped with proper driving-wheel brakes, and the equipment intended for the control of said car was in such condition that said automobile would not respond to the human agency for its control when applied, and the plaintiff well knowing these facts approached said place of injury driving at an excessive and dangerous rate of speed in view of the equipment then and there being used by her, and these facts and each of them contributed to the injury complained of."

The plaintiff, among other things, testified substantially that she knew the point in question was a dangerous place; that she always aimed to use caution when she made the turn, and that on this evening in particular she endeavored to use caution in making this turn, because she naturally cut her car down and put it in low in making·

the turn; that she used the same precaution she used on any turn. That when she came from the north the weeds had grown up high and she could see only a faint pathway; that she hadn't been in the habit of driving over it in the night and took what looked like a dividing of the weeds to be the road, and that there was where her car turned over.

Another witness testified:

"I asked her how she came to run in the ditch and she said she had no lights; that she had a flashlight and that was all the light she had, and wanted me to get it, stating that she had left it out there. I did not get it. I looked at the car when I was there and noticed that one lens was gone and there was no bulb in that light. I can't say about the other one."

Still another witness testified:

"I did not see the accident but I saw the automobile about 10:30 that morning. I looked at the automobile and I found that the lens on the right lamp was gone and the wires were not hooked up on that particular side, but I cannot say about other side. There was no bulb in the lamp on the right side. The wires were old and worn. The wire was broken short and was too short to be hooked up on the right side. It looked like it had been in that condition for quite a spell. I looked at the tracks running into the ditch. I don't know that I can explain, but she appeared to be coming along the west side of the north and south road, and just drove off the bank five or six feet south of this crossing.

"Q. Did you see any evidence, by looking at these tracks made by her automobile, of the automobile having skidded in any way? A. No, sir; only she started to pull it back up the bank and it slid and turned on over.

"Q. After she was in the ditch? A. Yes, sir. . . . There was plenty of road north of where this woman went into the ditch for her to have gone east. I would judge about fourteen or fifteen feet. I am acquainted with the actions of Ford cars and have driven them extensively. When the lights of a Ford car are run on the magneto the car will give ordinary good and sufficient light with the car running at a speed of three or four miles an hour if the car is in low gear. If it is in high gear, it would not give good lights."

We think the allegations of defendant's answer were sufficient to cover the negligence found by the jury. The question of plaintiff's contributory negligence was one for the jury (*Clark v. City of Hutchinson,* 114 Kan. 172, 217 Pac. 305), and we are of the opinion the evidence was sufficient to support the jury's finding. It will be noted there was testimony that the plaintiff had no lights or that her lights were in poor condition; that one lens was gone and that there was no bulb in that light; that the right light or lamp was gone and that the light wires were not hooked up on that side or were broken

off; that with no lights, or with one light gone, or with poor lights she could not properly have observed where she was going; that she did not look where she was going; that she took the weeds to be the road; that there was no gap or break in the weeds at the point where she drove into the ditch; that there was no gap in the weeds at or near this point where the fill of the east-and-west road joined on to the highway, except the gap itself where the road turned east, and there was no gap in the weeds for about six feet. That at the point where the car went into the ditch there could not have been anything like the gap or break in the weeds that there was at the point where the side road turned off; that if she had had good lights and had properly observed or looked where she was going she would not have mistaken a gap two or three feet wide in the weeds for the side road, which must have had a gap or break in the weeds several times that wide.

It has been held to be the duty of every automobile driver to have lights sufficiently good to enable him to see for such distance as it would require for him to stop, and it is his duty to keep a vigilant watch ahead. In *Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317, it was said:

"Independently of any statute it is negligence as a matter of law to drive an automobile along the highway on a dark night at such speed that it cannot be stopped within a distance that objects can be seen ahead of it." (Syl. ¶ 1.)

The judgment is affirmed.