No. 33,135

WILLIAM EDWARD MENELEY, by VICTOR D. MYERS, His Guardian and Next Friend, *Appellee,* v. C. H. MONTGOMERY and CLAIBOURNE WILSON, *Appellants.*

(64 P. 2d 550)

Opinion filed January 23, 1937.

*Hugh C. Larimer,* of Topeka, for the appellants.
*Thomas C. Forbes* and *Carl C. Chase,* both of Eureka, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action on behalf of a minor son to re-

cover damages for the wrongful death of his mother, resulting from an automobile collision. Plaintiff recovered, and defendants appeal.

Appellants first contend the trial court erred in overruling their demurrer to appellee's evidence. In support of this contention it is claimed appellee's evidence failed to prove appellants' negligence, and in any event it disclosed contributory negligence in the operation of the car in which appellee's mother was riding. The mother, Edith M. Meneley, and another schoolteacher, Silvia Underhill, had left Lamont, Kan., to attend a theatrical performance in Kansas City, Mo., that night. The latter drove her Chevrolet coupe automobile. Appellee admits the excursion constituted a joint enterprise; hence, if there was negligence in the operation of the car in which the mother was riding which contributed to the collision, recovery must be denied.

We shall refer to the car in which the mother was riding as the "coupe," and appellants' vehicle as the "cattle truck." Appellant Montgomery was the owner of the latter, and was riding in it. At the time of the collision it was being operated by appellant Wilson. No question is raised about the liability of both appellants, if either of them is liable. The facts will disclose the question of appellants' negligence and that of contributory negligence were properly submitted to the jury. In the discussion of the latter appellants ignore doctrines frequently announced by this court. They stress a certain statement of the driver of the coupe which was somewhat unfavorable to her. It dealt with the question of her distance from the cattle truck when it first turned into her lane of traffic. On several other occasions her statement as to this distance was more favorable to her. In *James v. Grigsby,* 114 Kan. 627, 220 Pac. 267, it was said:

"In considering a demurrer to evidence the court should take into consideration only those facts and inferences of facts which are favorable to plaintiff. (*Can Co. v. Ross,* 72 Kan. 669, 83 Pac. 616; *Travis v. Simpson,* 106 Kan. 323, 187 Pac. 684; *Rosenfeld Co. v. Gleed,* 110 Kan. 75, 202 Pac. 611.) . . .

"Some inferences favorable to defendant might be drawn from the evidence, but these could not be considered by the court on a demurrer to the evidence. See, also, *Wingfield v. McClintock,* 85 Kan. 207, 113 Pac. 394; and *Rainey v. Smith,* 109 Kan. 692, 201 Pac. 1106." (pp. 633, 634.)

This rule applies on demurrer where there are material discrepancies between the testimony of a party in chief and on cross-examination. See, also, *Hyland v. Railway Co.,* 96 Kan. 432, 151

Pac. 1107; *Wilhite v. Mason,* 102 Kan. 461, 464, 170 Pac. 814; *Custer v. Royse,* 104 Kan. 339, 340, 179 Pac. 353, and citations.

If appellee's evidence, when considered in the light most favorable to her, presented a situation where reasonable minds might differ as to proper care, the question of contributory negligence was for the jury. (*Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923; *Bergman v. Kansas City Public Ser. Co.,* 144 Kan. 27, 58 P. 2d 110.) The application of these principles to the instant facts will dispose of appellants' first contention.

The collision occurred about four-thirty p. m., December 7, 1934, on highway 75, and U. S. 50 S., about twelve miles north and two miles east of Burlington. The coupe was traveling east on the south side of the road, and the cattle truck, carrying a load of about fourteen thousand pounds, was traveling west. The latter, together with trailer, was about thirty-five or thirty-six feet in length. It was an oil-mat highway, about twenty-one feet wide at the place of collision. A state highway truck was parked on the north side, facing east. From it snow fences were being unloaded. Its south wheels were on the mat and its north wheels were on the slope of the north shoulder. It was parked from one hundred forty to one hundred fifty yards east of the crest of a hill over which the coupe traveled in its easterly direction. There was not to exceed a one-foot shoulder on the south side of the road. There was a small ditch on the south and a ledge of projecting rocks south of the ditch. Testimony favorable to the driver of the coupe, in substance, was:

They had been traveling about fifty miles an hour when they noticed some icy spots on the road as they approached the crest of the hill; they slowed down to between thirty-five and forty miles per hour by the time they reached the crest; the driver then noticed the parked truck, and the cattle truck about one hundred feet east of the parked truck, coming west on the north side of the road; she applied the brakes; the road was clear on her side of the highway; she had traveled some distance east of the crest but did not know exactly how far when the cattle truck turned into her lane of traffic, without warning, in trying to pass the parked truck. The transcript indicates that while testifying she pointed to an exhibit before her and indicated about where she was at that time. The point is not fixed by the record. The jury found, in answer to question No. 2, she was then about seventy-five yards west of the parked truck. We cannot say there was no evidence to support

that finding. She then clamped down on the brakes and kept them on. Before the cattle truck turned into her lane she was traveling about twenty-five or thirty miles per hour. After a little while her car began to skid and finally turned sideways. There was no space to drive by on the south of the cattle truck or between the trucks. The front of the cattle truck struck the rear, right side of her car. The road sloped somewhat to the east from the crest of the hill. The slope was not continuous. It was more nearly level in some places than in others. There was no evidence of the distance within which the coupe could have been stopped at its speed while coming down this slope spotted with ice. She was very uncertain as to the speed of the cattle truck at the time of collision but thought it might have been around fifteen miles per hour.

Appellants contend it is a well-established general rule that it constitutes negligence *as a matter of law* for one to drive a motor vehicle at such a rate of speed that it cannot be stopped in time to avoid an obstruction discernible within the range of his vision ahead. (*Lindquist v. Thierman*, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893, and note.) There are certain conditions under which that rule applies. (*Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317; *Haines v. Carroll*, 126 Kan. 408, 267 Pac. 986; *Knox v. Stevens County Comm'rs*, 128 Kan. 22, 276 Pac. 84; *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 316, 282 Pac. 593.)

There are conditions under which it has been held the question of negligence was for the jury. (*Barzen v. Kepler*, 125 Kan. 648, 266 Pac. 69; *Hayden v. Jack Cooper Transport Co.*, 134 Kan. 172, 5 P. 2d 837; *Deardorf v. Shell Petroleum Corp.*, 136 Kan. 95, 12 P. 2d 1103; *Sponable v. Thomas*, 139 Kan. 710, 720, 33 P. 2d 721.) In the Hayden case it was held:

"The rule that one driving an automobile in the nighttime must so operate his car that he may stop it within the range of vision of his headlights, is applicable in cases where vehicles or other objects on the highway may be seen by the aid of proper lights, but where an obstruction was of such a character and so placed that a motorist driving his car properly equipped with lights and brakes, at a moderate speed, *is unable to see an obstruction in time to prevent colliding with it*, and is otherwise free from negligence, he cannot be held guilty of contributory negligence as a matter of law." (Syl. ¶ 1.) (Italics inserted.)

Whether the driver of the coupe, in this case, was able to observe the cattle truck in her lane of traffic in time to prevent the collision, with the proper exercise of care under all the circumstances, could not

be answered as a matter of law, but was a proper question for the jury. To adopt the contention advocated by appellants as conclusive in every situation where an obstruction unexpectedly appears without warning would result in the erection of a legal monstrosity, the effects of which would be too terrible to contemplate. Carried to its logical conclusion, that doctrine would mean that a vehicle approaching from an opposite direction could suddenly and without warning turn squarely in front of a car traveling at a reasonable and proper rate of speed, in its own proper lane, and thereby make the latter guilty of negligence. The contention is untenable. Clearly, both the question of appellants' negligence and that of contributory negligence were questions for the fact-finders under proper instructions.

Appellants further contend the trial court should have instructed on the question of pure and unavoidable accident, as requested. The theory of the request is based on appellants' testimony the coupe was not in sight when they started around the parked truck. The request was properly denied. In 1 C. J. 393 it is said:

" 'Mere accident' or 'pure accident' are terms often used when it is desired to repel the idea of negligence, and are equivalent to the words 'not by defendants' negligence.' "

Appellants' own evidence required the case be submitted to the jury. Their testimony in substance was: The road was very icy; they had a load of about fourteen thousand pounds; they shifted gears just before they started to pass around the parked truck; they were traveling only about six miles per hour when trying to pass the parked truck; the cattle truck and trailer combined were about thirty-five to thirty-six feet long; the driver accelerated the motor and caused the wheels to spin; with the load he had and the ice on the hill, he was prevented from making any speed and he then set his brakes.

This presented not a question of pure or unavoidable accident but a question of appellants' negligence in attempting to negotiate the hill on the south side of the road, in view of all the dangerous circumstances.

Appellants have abandoned their objection to instructions given, but seriously claim the court should have given certain additional instructions requested on the subject of joint enterprise and the proper items of recovery. Instructions on joint enterprise are no longer material, as the jury absolved the driver of the coupe of neg-

ligence. Instructions given on items of recovery have been carefully examined and found to be sufficient.

It is further earnestly contended special findings of the jury, numbered 1, 2, 5, 6, 8 and 10, should have been set aside on appellants' motion as wholly contrary to the evidence. It is also urged here that finding number 7 was not alleged as a ground of negligence and is unsupported by evidence. These findings are:

"1. Just as Wilson pulled out to go around the highway truck did he see the Chevrolet coupe, or could he have seen it if he had looked towards the west? A. Yes.

"2. Just as Wilson turned out to go around the highway truck how far west of the highway truck was the Chevrolet coupe? A. 75 yards.

"5. Giving consideration to the meaning of the expression 'proximate cause' as used in the instructions, state fully what you find was the proximate cause of the collision. A. Wilson's blocking of highway with Diamond 'T' truck on south side of highway or wrong side of highway.

"6. Was the defendant Wilson guilty of negligence? A. Yes.

"7. If you answer the last question 'yes,' then state what acts of his you find constituted such negligence. Answer fully. A. Failure to see Chevrolet coupe.

"8. Was Silvia Underhill guilty of contributory negligence? A. No.

"10. When the Chevrolet coupe came over the crest of the hill so that it could have been seen by Wilson, where at that time was the Diamond 'T' truck? A. 50 feet east."

If there was substantial evidence to support the findings they must of course stand. In reviewing the evidence we can be concerned only with testimony and inferences therefrom which tend to support the findings. (*Bergman v. Kansas City Public Ser. Co.,* 144 Kan. 27, 29, 58 P. 2d 110.)

While neither of the abstracts disclose evidence to support finding number 1, the transcript reveals there were no hills within a distance of twenty-three hundred feet east of the crest of the hill which would obscure the view of a car within that space. Furthermore, in the conclusion of brief for appellants, it is admitted that as appellants approached the parked truck they could see to the crest of the hill. We have previously discussed finding number 2, insofar as it was supported by appellee's evidence. It will also be remembered the driver of the coupe testified, after she came over the crest of the hill, she set the brakes on two occasions. The second time occurred when the cattle truck started around the parked truck. Finding number 2 is corroborated by appellants' witness, McKinstry, who testified, when the brakes of

the coupe were set the second time it was between fifty and seventy-five yards from the point of accident. Appellants' own evidence supported finding number 5. The witness, Wilson, testified there was no room for the driver of the coupe to pass his truck and there was nothing for her to do except apply the brakes. Findings 6 and 7 were superfluous, as the case was resolved against appellants by finding number 5. The result followed whether appellants saw the coupe or failed to see it. There was nothing to prevent them from seeing it. Appellants now complain finding number 7 was not pleaded as a ground of negligence. A motion to set it aside for that reason might have been sustained. No such motion was lodged. The jury, however, had previously found the proximate cause of the accident was the negligence contained in finding number 5. Under these circumstances there is no reason for disturbing the verdict by reason of finding number 7. Finding number 8 was, in effect, treated under the first contention of error and requires no further discussion. Appellants admit the jury, by answer number 10, meant fifty feet east of the parked truck. We confess we find no specific evidence to support the exact distance of fifty feet. Right or wrong, the jury chose to believe the cattle truck was east of the parked truck when the coupe came over the crest of the hill. We fail to see how the exact number of feet is now material. The undisputed fact remains the cattle truck reached a place practically south of the parked truck at the time of collision. The front of the cattle truck had proceeded about as far west as the rear end of the parked truck. The jury, on the basis of evidence, might have said one hundred feet instead of fifty feet in answer to question number 10. If appellants' truck was only fifty feet east of the parked truck when the coupe came into view its chances of passing around the parked truck in time to avoid the collision were better than if it had been one hundred feet east. The answer is therefore more favorable to appellants than it might have been. Furthermore, the mere striking of that answer would not affect the verdict.

Finally, it is urged the verdict and special findings are the result of passion and prejudice on the part of the jury. The record before us will not sustain a reversal on that ground. The judgment must be affirmed. It is so ordered.