No. 33,808

ALICE WALTMIRE, *Appellee*, v. D. L. FORD, *Appellant*.

(78 P. 2d 893)

Opinion filed May 7, 1938.

*Harry W. Fisher* and *Harry Warren,* both of Fort Scott, for the appellant. *Douglas Hudson,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for wrongful death suffered in an automobile accident. From an adverse judgment the defendant appeals, the principal question submitted being whether the decedent and the plaintiff as a matter of law were guilty of such negligence as would bar recovery. At the trial the defendant demurred to plaintiff's evidence on the ground no cause of action was proved, and later raised substantially the same question by certain post-trial motions to which reference will be made.

Plaintiff's evidence showed the following: The place of the accident was on U. S. highway 69 about five and one-half miles north of Fort Scott, and the time was about 7:30 p. m. on January 16, 1937. Highway 69, which at this point runs north and south, is paved with brick eighteen feet wide and concrete strips one foot wide along the sides, and in the vicinity the highway is level for a considerable distance both north and south. On the evening in question the pavement was clear, but the shoulders outside the concrete strips were covered with ice and snow. Plaintiff and her husband lived near the scene of the accident. On that evening their employee, Fisher, started to town in his Ford car, but after going a short distance the car stalled. Fisher left it on the west

shoulder of the road and perhaps five or six feet from the concrete strip. He returned to the house and told plaintiff and her husband and then left. Shortly thereafter plaintiff's husband, accompanied by plaintiff, took his Dodge sedan and went south along the highway to where he could turn his car around to face the north. He stopped his car about fifteen feet north of the Fisher Ford, and as stated by plaintiff, so that the left wheels were on the dirt shoulder and the right wheels were on the concrete edge, the car facing a little east of north. This car had both bright and dim light equipment and the dim lights were on. With the Waltmire car in that position and condition, Mr. Waltmire got out and took out a wire cable fitted with hook and loop. Mrs. Waltmire moved over to the driver's seat and from there operated a flashlight for her husband, who fastened the cable to the rear of the Fisher Ford and to the rear of his own car. During this time an unidentified car came from the north and passed to the east of the Waltmire car. Shortly thereafter, defendant, driving his car, came from the north. What he saw and did will be more fully detailed later, but he drove off to the west side of the pavement, on to the shoulder, and just as he was about to pass the Waltmire car, struck Mr. Waltmire, who was standing by the west or left rear door of his car. Defendant's car about the same time struck the left rear portion of the Waltmire car and a little later struck the rear of the Ford. After the accident, Mr. Waltmire was found badly injured and lying four or five feet to the rear of his car, and somewhat under the left running board of the defendant's car, which had come to a stop in a nearly east-and-west position, with its front wheels on the pavement. Waltmire died shortly after being taken to Fort Scott. Defendant's demurrer to this evidence as not proving a cause of action was overruled. He complains of that ruling, and contends that the evidence establishes contributory negligence on the part of plaintiff and her deceased husband.

In his argument, defendant calls our attention to statements of certain witnesses as to locations of cars, etc., and to testimony putting a somewhat different aspect on what occurred than is detailed above, but in determining sufficiency of evidence as against a demurrer, the court is concerned only with evidence and inferences therefrom favorable to the party offering it and does not consider that favorable to the demurring party, and the statement above is made in view of that rule. (See *Meneley v. Montgomery*, 145 Kan. 109, 64 P. 2d 550.)

While the burden of proving contributory negligence is usually on the defendant, where plaintiff's proof shows him guilty of it, the defendant can take advantage of it by demurrer. (*Houdashelt v. State Highway Comm.*, 137 Kan. 485, 492, 21 P. 2d 343, and cases cited.) The question of the sufficiency of evidence as against a demurrer in cases similar has been before this court on numerous occasions. In *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721, the test was stated thus:

"In determining whether as a matter of law a plaintiff is guilty of contributory negligence which precludes his recovery for injuries sustained, all of the testimony favorable to the plaintiff must be accepted as true, and if the facts are such that reasonable minds reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law." (Syl. ¶ 4.)

This test has been approved in the following cases: *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 51, 53 P. 2d 923; *Bergman v. Kansas City Public Ser. Co.*, 144 Kan. 27, 58 P. 2d 110; *Crowe v. Moore*, 144 Kan. 794, 62 P. 2d 846; *Watson v. Travelers Mutual Cas. Co.*, 146 Kan. 623, 73 P. 2d 64.

Appellant contends that plaintiff's evidence shows that plaintiff and her husband placed themselves in a position of peril and imminent danger, and a position where an ordinarily prudent person could have foreseen that an accident would happen, and that under the decision in *Canestro v. Joplin-Pittsburg Rld. Co.*, 135 Kan. 337, 342, 10 P. 2d 902, they were guilty of contributory negligence. An examination of the facts of that case shows a marked difference from those now before us. There the plaintiff left a place of safety in the street and in attempting to pass other cars going in the same direction moved over into the path of an approaching trolley car, with which the plaintiff collided. Appellant also directs our attention to *Crowe v. Moore*, 144 Kan. 794. 62 P. 2d 846, where the casualty was caused by collision of cars, that of the plaintiff being on the wrong side of the highway, and to *Hiler v. Cameron*, 144 Kan. 296, 59 P. 2d 30, where plaintiff's car swerved to the wrong side of the highway and into the path of defendant's car. In both of these cases it was held that plaintiffs were guilty of negligence which was the proximate cause of their injuries. In both cases, plaintiffs' cars were moving at the time of the respective accidents. In the case before us, the plaintiff's car was at rest. The plaintiff and her husband had taken a position on the pavement at the time when there were no approaching cars, and when they stopped their car they

left it properly lighted with dim lights. Appellant argues it was negligence as a matter of law to stop and leave the car on the wrong side of the highway—that is, it was negligence per se to leave the car faced north on the west side of the highway.

Appellant places considerable reliance on *Whitworth v. Riley*, 132 Okla. 72, 269 Pac. 350, 59 A. L. R. 584, the first headnote of which reads:

"Where a person drives his automobile on his left of the center of a public highway in the nighttime, and the same becomes stalled in a position that would not permit passage of an automobilist to his right traveling in the opposite direction, and so stands with the headlights on to indicate a moving car, the act of permitting the car to thus remain constitutes prima facie evidence of negligence by the driver thereof, in the event of a collision therewith by another automobilist going in the opposite direction, who, by virtue of the rules of the road, had the right to assume from the fact that the headlights were on, that the stalled car was in motion and would be operated in conformity with the law. And in an action to recover damages in such case, brought by the colliding automobilist, whether or not the plaintiff was guilty of contributory negligence in failing to stop his car or to adopt some other method in an attempt to avoid collision is a question of fact."

It will be observed that in that case, parking under similar circumstances was held only to be prima facie evidence of negligence.

In an annotation on "Liability for injury in collision with automobile standing on wrong side of street or highway" in 70 A. L. R. 1021, it is stated in the introduction:

"Of course, the standing of the automobile on the wrong side of the street or highway is a factor which must be considered in its relation to other matters, such as whether it is daylight or dark, whether the street or highway is a frequented one or otherwise, whether there are lights on the car, and whether the parking or stopping was unavoidable. And the questions of negligence, contributory negligence, and proximate cause must, of course, ordinarily be determined from all of the circumstances, and not from the mere fact of standing on the wrong side of the street or highway."

And decisions of courts of different jurisdictions are cited and commented on.

In 5 Am. Jur. 682 (Automobiles, § 335) it is said:

"It is generally recognized as negligence to park on the wrong side of a much-traveled highway, and in some cases this is held as a matter of law. In other cases such parking is held merely to be evidence of negligence.

"The mere fact of stopping an automobile on the wrong side of a highway does not, under all conditions, constitute negligence. Parking on the left side with headlights burning for the purpose of making a delivery or making repairs to the engine—even if there was opportunity to turn off the road for

that purpose—is not negligence. In the ordinary case negligence in parking or stopping on the wrong side presents a jury question.

"The driver of an approaching car on his right-hand side of the road who sees in front of him the headlights of another car facing him has the right to assume that such car is in motion and will be operated in conformity with the law of the road.

"In order that liability may be based upon parking on the wrong side, the fundamental rule of negligence law—namely, that the negligence in so parking must be the proximate cause of the injury—applies.

"The doctrine of last clear chance has been held inapplicable in the situation presented by the class of cases under consideration."

See, also, Babbitt, Motor Vehicle Law, 4th ed., p. 496, to the same effect.

In 2 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. ed.), p. 334, § 1199, it is said:

"Although a driver may stop his car upon the left-hand side of the road when reasonably necessary for the purpose of making repairs, if he does not thereby unreasonably interfere with the rights of others, stopping a car on the wrong side of the street or highway may, under appropriate circumstances, constitute negligence, and, where such is in violation of a statute, it has been declared to be negligence per se.

"The mere fact that a car is parked on the wrong side of the street will not permit a recovery by one who recklessly or carelessly runs against the car so parked; and the question whether or not the stopping on the wrong side of the street was a proximate contributing cause of the collision may be one for the determination of the jury."

Other authorities of similar effect, cited in the briefs, have been examined, but will not be specifically mentioned.

While our decisions have recognized the duty of the driver of a car to keep on his right side of the road or highway (see *Crowe v. Moore*, supra, and cases cited), in each of those cases both vehicles have been under way. Can it be said as a matter of law it was negligence for Mr. Waltmire to go to the place of the stalled car and to be on the wrong side of the highway for the space of three or four minutes while he was preparing to tow it away? Assuming it may be said that Waltmire, having stopped his car on the wrong side of the highway, after dark, with its headlights dim, was guilty of prima facie negligence, what other circumstances should be considered? It is not contended by appellant there was violation of any statute on the subject. The evidence showed that the highway was level in each direction; that the brick and concrete pavement was clear of ice and snow which covered the shoulders of the high-

way. From this evidence, as well as from a photograph introduced in evidence, it is clear that the limits of the highway were clearly discernible, and that the position of the Waltmire car, which stood facing slightly east of north with its dim headlights on, was easily discernible. It was also to be deduced from plaintiff's evidence, that defendant saw the situation, for when about twenty-five or thirty yards distant, he turned to the right, off the pavement, and proceeded on the shoulder. While it is true the conduct of a driver approaching from the north may have been affected by whether he saw headlights or taillights on his proper side of the highway, we are not discussing possible negligence of an approaching driver, but only negligence as a matter of law of the driver of the parked car. No one claims it was negligence on Waltmire's part merely to attempt to tow the Fisher car to his home; the claimed negligence is in the manner of performing that act. Of course, it was possible, and conceding it was much more advisable that he first stop with his car headed south and pull the stalled car in that direction, whether Waltmire's car was faced north or south, it had to be on the west side of the highway in order to have a towline reach the stalled car. Perhaps Waltmire didn't attempt the towing in the same manner some other persons might have, but when it is remembered that the shoulders of the highway were covered with ice and snow, and it would have been difficult to have turned around to the north had he first proceeded south—and such a course would have blocked the highway perhaps more than his method did—can it be said that as a matter of law Waltmire was negligent? We think not. What has been said applies likewise as to any claimed negligence of the plaintiff individually. We think that under all the circumstances present, it was a fair question for the jury whether the plaintiff or her husband was guilty of negligence.

Defendant's evidence showed that he was driving his car south at the rate of from fifteen to twenty miles per hour and that he saw the lights of the Waltmire car when he was about a quarter of a mile away. His car had good lights, and proceeding at fifteen miles an hour he could stop in fifteen feet. The snow and ice were off the pavement and he could see clearly where the edge of the pavement was. When he got closer to the Waltmire car, he slowed down to fifteen miles an hour. He discovered the Waltmire car was stationary, and without further slackening his speed he left the pavement about twenty-five or thirty yards to the north of the Waltmire car

and attempted to drive to the west side of it, with the resulting collision. Defendant stated plaintiff's car was well out on the pavement and he thought he had room to pass it on the west. The jury did not give credit to his statement as to location of plaintiff's car.

The case was submitted to the jury, which answered special questions and returned a verdict for the plaintiff. The questions and answers were as follows:

"1. Upon what part of the roadway, with reference to the center of the pavement, was the Waltmire car at the time of the collision? A. Two front wheels on pavement, left rear wheel on shoulder, right rear wheel on slab.

"2. Did the Waltmire car have headlights showing brightly or dimly, at the time of the collision? A. On dim.

"3. Where was Alice Waltmire at the time of the collision? A. At the wheel.

"4. Where was the model-T located at the time of the collision? A. Fifteen feet southwest of Waltmire car.

"5. Did the model-T Ford have any lights showing at the time of the collision? A. No.

"6. Was the model-T Ford attached to the Waltmire car, and if so, how? A. Attached to car, by cable.

"7. Did either the deceased or Alice Waltmire give the defendant any warning of their position on the highway? A. By headlights on Waltmire car.

"8. Was the defendant guilty of any negligence? A. Yes.

"9. If you find defendant guilty of negligence, of what did his negligence consist? A. By not approaching the Waltmire car with less caution.

"10. Was there anything to prevent the deceased and Alice Waltmire from having attached the model-T Ford to their car and pulling it south? A. No."

Immediately upon the return of the answers, plaintiff moved the trial court to return the jury to the jury room to make the answer to question 8 more definite and certain. Defendant objected and the trial court denied the motion. Defendant moved for a new trial and for judgment notwithstanding the verdict, alleging the verdict was unsupported by and was contrary to the evidence, that the evidence showed plaintiff and her deceased husband were guilty of negligence, and that the answers to the special questions were contrary to the general verdict. Both motions were denied. No motion was made to set aside the answer to any special question.

We have examined the evidence as abstracted and hold that it supports the general verdict and the answers to the special questions. What has been said with reference to contributory negligence disposes of the contention with respect to it. We fail to see wherein the answers to the special questions are inconsistent with the gen-

eral verdict. We note the seeming inconsistency in the use of the word "less" for the word "more" in the answer to the ninth question. Appellant professes ignorance of what the jury meant. We have no doubt of its meaning. The inaccurate use of a word, where the whole meaning is clear, is not sufficient to compel reversal. Appellant also contends that, by reason of the answer to question 9 being as it is, there is no finding of negligence on the part of the defendant. It must suffice to say we do not entertain the same meaning to be attributed to the answer to question 9 as does appellant. Further, his objection to the jury's being returned to make a more definite and certain answer to question 8 having been sustained, he is hardly in position to complain.

Appellant, in connection with his motion for a new trial, contends the trial court erred in one instruction to the jury. There is no showing that any objection was made to any part of the instructions when they were given, and strictly the question may not now be raised. We have, however, noticed appellant's criticism of instruction No. 8. Reading it in connection with the remaining instructions, we cannot say the cause was not fairly submitted to the jury.

Essentially this was a fact case. The jury's verdict and answers to special questions are supported by the evidence. There was no error in the admission of testimony nor in the trial court's ruling, and the judgment is affirmed.