## No. 37,715

Lee O. Morrison and Pauline Morrison, Husband and Wife, *Appellees,* v. Hawkeye Casualty Company, a corporation, R. C. White and Glen McMillan, *Appellants.*

(212 P. 2d 633)

filed December 10, 1949.

*T. F. Railsback,* of Kansas City, argued the cause, and *Walter Fuller, Jr.,* of Kansas City, and *Frederick G. Apt,* of Iola, were with him on the briefs for the appellants.

*Kenneth H. Foust* and *John O. Foust,* both of Iola, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.; This was an action by parents to recover damages for the wrongful death of their nine year old son, Garrold Morrison, who was killed at a point about one mile south of Iola while riding a bicycle in a northerly direction on U. S. Highways Nos. 169 and 59 at a time when the boy was being overtaken and passed by a gasoline transport truck, driven by Glenn McMillan, owned by R. C. White and insured by the Hawkeye Casualty Company, a corporation, all of whom were defendants. The plaintiffs recovered and all defendants appeal.

The pleadings are not in controversy, hence it is only necessary to refer to portions thereof vital to appellate issues involved.

Thus limited allegations of the petition read:

". . . That the said plaintiffs' son was struck and thereby killed by the said defendant's, R. C. White, truck, this occurred about one-quarter (¼) of a mile south of Bassett, Kansas, on highway numbers 169 and 59.

"6. That plaintiffs' son, Garrold Orphie Morrison, was riding a bicycle in a careful and prudent manner and that his death was the direct and proximate result of the negligence of the defendant, Glen McMillan, in the operation of defendant's, R. C. White, said truck as follows:

"(a) That plaintiffs' son was, in company with his brother Victor Morrison and Chester Keith, riding his bicycle north on the east side of said highway Numbers 169 and 59. The three boys were riding in a single line well over to the east side of said highway. The plaintiffs' son being the last in the line.

"(b) That defendant, Glen McMillan, negligently failed to use due care in that said truck was being driven at a high and dangerous rate of speed, approximately fifty (50) miles per hour, and that the defendant upon seeing the boys on their bicycles failed to slow down and slacken the speed of the said truck at any time in order to avoid hitting the said plaintiffs' son although having ample opportunity to do so.

"(c) That defendant, Glen McMillan, also going north on said highway numbers 169 and 59, overtook the said boys from the rear, hitting the said plaintiffs' son, Garrold Orphie Morrison, while said boy was on the east side of the highway and while said defendant, Glen McMillan, was attempting to pass the said boy.

"(d) That the defendant, Glen McMillan, drove the said truck on the said

public highway without regard to the presence of the plaintiffs' son and negligently failed to turn the said truck to the left and thereby avoid hitting the said boy although the defendant had ample opportunity to do so.

"(e) That the defendant, Glen McMillan, did not sound or honk his horn or give any other warning as he attempted to pass plaintiffs' son, who was riding a bicycle on the highway, and that as a result of said negligence and carelessness of the defendants in the operation of said truck, the death of the plaintiffs' son resulted as a direct result of the aforesaid negligence and carelessness of the defendant."

. . . . . . . . . . . .

"11. That at the time defendants' truck hit the said plaintiffs' son aforesaid, the defendants' truck was being operated on the highways of the State of Kansas pursuant to a permit issued by the State Corporation Commission of the State of Kansas, as a private motor carrier of property and a contract motor carrier of property which permit number was 52-49, issued by said Commission. . . ."

Defendants' answer includes a general denial and allegations charging plaintiffs were guilty of contributory negligence in permitting their son to travel upon a main and busy thoroughfare on a bicycle when he was too young and inexperienced to possess the requisite skill and ability required to ride such a vehicle and that the boy's death resulted from his own contributory negligence. With respect to these charges of negligence it also avers the child lost control of the bicycle and fell therefrom near the rear wheels of the truck and that his death resulted from head injuries and fracture of the skull caused by his head having struck the concrete pavement slab.

All allegations of the answer, including those pertaining to contributory negligence, are denied by the plaintiffs' reply.

On issues joined by the pleadings as heretofore related the case came on for trial by a jury. A demurrer to the plaintiffs' evidence was overruled by the trial court after which defendants adduced their evidence. The cause was then submitted to the jury along with thirteen special questions. In due time the jury returned a general verdict in favor of plaintiffs for the sum of $1,750 together with its answers to the special interrogatories submitted. Defendants then requested that the court set aside the answer of the jury to interrogatory No. 9. Later they moved for judgment notwithstanding the general verdict. Each of these motions was denied. They then filed a motion for a new trial, specifying error in overruling the demurrer to the evidence, in refusing to give instructions and submit special questions, and abuse of discretion. This motion was denied. Plaintiffs' motion for a new trial received similar treat-

ment. Thereupon the trial court approved and accepted the verdict and special findings and rendered judgment in accordance therewith.

Defendants then took an appeal from the judgment and all rulings of the trial court heretofore mentioned.

The special questions and their answers must be conceded to be of vital importance to a determination of the rights of the parties to this appeal. For that reason it is fitting to quote them *in toto* early in this opinion. They read:

"1. Did the defendant's truck run into Garrold Orphie Morrison? A.: No.

"2. If you should answer the foregoing question in the affirmative, what part of the defendant's truck ran into the deceased? A.: ———.

"3. Where on the highway were the three boys riding on their bicycles when the defendant's truck came up to and overtook them? A.: On shoulder.

"4. Where on the highway was defendant's truck running when it came up to and overtook the three boys riding on their bicycles? A.: East side.

"5. What was the distance between the defendant's truck and the boys riding on bicycles when said truck was passing them? A.: 3½ feet.

"6. Did the defendant's truck run over the body of Garrold Orphie Morrison? A.: No.

"7. If you should answer the foregoing question in the affirmative, then state which wheel or wheels of the defendant's truck ran over the body of Garrold Orphie Morrison. A.: ———.

"8. At the time the front end or cab of defendant's truck overtook and passed said Garrold Orphie Morrison riding along the east side of the highway on his bicycle and so long as he was in plain sight of the driver thereof,

"(a) Was the deceased riding off the pavement slab and on the shoulder of the road? A. Yes.

"(b) Was he having any apparent trouble or difficulty in riding his bicycle? A. No.

"(c) Did he later have trouble or difficulty in managing bicycle, before defendant's truck had completely passed him? A. Yes.

"(d) If you answer the foregoing question (c) in the affirmative, state what occurred. A. Hit a rough spot.

"9. If you return a verdict in favor of the plaintiffs, then state specifically what act or acts of negligence you find the defendants or any of them to be guilty? A.: Failure to yield enough right of way.

"10. Was the deceased, Garrold Orphie Morrison, thrown off his bicycle? A.: Yes.

"11. If you answer the foregoing question in the affirmative, then state what caused him to be thrown off his bicycle? A.: Hit a rough spot.

"12. Did the plaintiffs' nine-year-old son, Garrold Orphie Morrison, possess sufficient skill and experience safely to ride his bicycle on Highway U. S. 169 at the time and place where his death occured? A.: Yes.

"13. If you should answer the foregoing question in the affirmative, then state whether or not the deceased, Garrold Orphie Morrison, rode and managed his bicycle, at the place and time of his injury, and under all the cir-

cumstances disclosed by the evidence here, in a careful and prudent manner and with due regard to his own safety? A.: Yes."

Before giving consideration to·questions raised by the appeal the issues will be simplified by pointing out that appellees failed to perfect an appeal from 'the order overruling their motion for a new trial while appellants concede that questions pertaining to negligence of the parent appellees in permitting their deceased son to ride his bicycle on the highway and the decedent's contributory negligence in operating such vehicle at the time of the accident were disposed of by special findings Nos. 12 and 13.

A similar result will follow from early disposition of another matter. Throughout their brief and argument appellants insist that allegations of the petition, heretofore quoted, must be construed as precluding appellees' right to recover unless the evidence discloses their truck ran into and over the body of the decedent. In fact the form of questions 1 and 6 submitted by the court on their request is indicative of their theory. Appellants' position on this point is too narrow and cannot be upheld. While its allegations might have been more definite we believe the petition is susceptible of the construction it charges there was a collision on the highway between the truck and the boy on the bicycle resulting from negligence of the appellants as charged in the petition.

With the last point decided we have little difficulty in concluding the trial court did not err in overruling appellants' demurrer to appellees' evidence. One witness testified in substance that as the truck came from the south on the east side of the highway it attempted to pass the boys who were also on that side of the road without swerving or turning over to the west. One of the bicycle riders, who escaped injury, stated that the driver did not honk his horn or give any warning before attempting to pass. Another said that as he glanced to the rear it looked to him as if the back end of the truck hit Garrold and just threw him in the air. The sheriff of Allen county testified that he found a blue raveling or thread in the right back dual tire of the truck immediately after the accident. Another witness stated that Garrold was wearing a blue shirt and blue overalls on the day he was killed. In the face of this evidence, the trial court would have erred if it had taken the case from the jury.

Neither do we have difficulty in disposing of appellants' claim the trial court's refusal to submit two requested special questions

was erroneous. The court submitted thirteen out of fifteen questions requested by them. Our code of civil procedure (G. S. 1935, 60-2918) expressly provides that no party in any case shall be entitled as matter of right to request more than ten special questions. If appellants deemed the two questions of which they now complain so vital to their cause they should have eliminated some of those submitted. We have no doubt if they had done so the trial court would have submitted those now in question. Moreover, under the same section of the code the allowance of more than ten such questions is within the discretion of the court. Under our decisions (see, *e. g., Sluss v. Brown-Crummer Inv. Co.*, 143 Kan. 14, 53 P. 2d 900; *Cheek v. Eyth*, 149 Kan. 586, 588, 89 P. 2d 11; *Hamilton v. Lanoue*, 145 Kan. 768, 774, 67 P. 2d 574; *Davidson v. Douglass*, 129 Kan. 766, 770, 284 Pac. 427; *Giles v. Ternes*, 93 Kan. 140, 142, 143 Pac. 491) where that number is submitted, all at the request of one of the parties, a court does not abuse its discretion in refusing his request for more.

But that is not all. Proffered question No. 14 simply inquired as to whether the appellees exercised due care and caution in permitting their son to ride upon the highway on a bicycle. By instruction No. 11 the court specifically told the jury that if appellees were guilty of negligence in that respect they could not recover for their son's death. The result is that appellants were not prejudiced by failure to submit this question. Thus, even if it should have been submitted failure to do so did not constitute reversible error (G. S. 1935, 60-3317). By special question No. 15 appellants not only sought to ascertain what caused the death of appellees' son but also what brought it about. This was a dual question and the court was not required to submit it under any circumstances.

Nor are we troubled with appellants' assignment of error with respect to requested instructions. Complaint is made of the trial court's refusal to submit an instruction to the effect that the place of the appellant, casualty company, in the lawsuit was that of an insurance company from whom appellant, White, had purchased insurance and that it was not charged with any negligence or act resulting in the death of appellees' son. Appellants do not bring up the instructions. Appellees insist that the matters included in the requested instruction were fully covered by instructions which were given and are not brought here. Under such conditions we might well dispose of this alleged error on the ground that our decisions

(see *Lambert v. Rhea,* 134 Kan. 10, 4 P. 2d 419; *Wyckoff v. Brown,* 135 Kan. 467, 11 P. 2d 720; *Farmers State Bank v. Crawford,* 140 Kan. 295, 297, 37 P. 2d 14) require the appealing parties to bring up a complete record of all matters upon which review is sought and that where instructions are challenged on grounds of failing to cover the issues it is incumbent upon them to bring up all the instructions or make it affirmatively appear that those omitted contain nothing pertaining to the matters they seek to have reviewed. However, that is not required. From an examination of the instructions and the entire record we are convinced the jury was fully aware of the casualty company's status as a party defendant and that failure to give this requested instruction did not prejudicially affect appellants' substantial rights.

In *Jacobs v. Hobson,* 148 Kan. 107, 79 P. 2d 861, we held:

"Technical errors which do not affirmatively appear to have prejudicially affected the substantial rights of parties are not grounds for reversal. (G. S. 1935, 60-3317.)" (Syl. ¶ 2.)

See, also, *Firmin v. Crawford,* 140 Kan. 370, 36 P. 2d 970; *Donley v. Amerada Petroleum Corp.,* 152 Kan. 518, 525, 106 P. 2d 652.

The other requested instruction which was refused deals with proximate cause and need not be detailed. It suffices to say it places too much emphasis upon appellants' version of the facts disclosed by the evidence and ignores others of equal if not of more importance. Moreover, the instructions as submitted fairly cover the subject of proximate cause. In that situation, under all of our decisions, the trial court did not err in refusing to give this instruction in the form requested. (See West's Kansas Digest, Trial, § 260 [1]; Hatcher's Kansas Digest, Trial, § 201.)

All remaining specifications of error are argued by appellants under the general heading that negligence found in the special verdict was not claimed by appellees in their petition. Included in their argument on this point are: (1) Refusal to set aside and strike out the answer to special question No. 9; (2) the overruling of a motion for judgment *non obstante;* (3) approval of the general and special verdicts and the rendition of judgment thereon, and (4) denial of the motion for a new trial.

Strange as it may seem, this is not a case where much emphasis is placed upon failure of the evidence to support the special findings and the general verdict if appellants' general contention, as heretofore stated, is not upheld. On that account, except for informative

purposes and one reason to be presently discussed, a detailed statement of the factual situation disclosed by the record is not required.

Summarized, essential features of the factual picture supporting the verdict, not heretofore mentioned, can be stated thus: All vehicles involved were proceeding in a northerly direction on a highway, the paved slab of which was eighteen feet with eighteen inches of shoulder on either side of such slab. While overtaking and attempting to pass three boys who were riding on bicycles the driver of the truck had a clear and unobstructed view for a distance of several hundred feet. Because of a motor vehicle approaching from the north the driver drove the truck, which was thirty-five feet long and approximately eight feet wide, straight down the highway on the east side of the slab at a speed of thirty to thirty-five miles per hour until he passed the on-coming vehicle at a point twenty to twenty-five feet to the rear of the bicycle riders, who, in the meantime, had turned off the slab and were on the shoulder of the highway. What happened thereafter is in conflict but there is evidence to the effect that the truck proceeded straight down the highway, without turning out, and attempted to pass the boys who were still on the shoulder of the road, with a clearance of not more than 3 to 3½ feet. At or about the point on the highway where this attempt was made there was a culvert marked by a post on each side of the road. At the east end of this culvert there was a hole or depression in the shoulder which made it difficult, if not impossible, to proceed forward on the shoulder without turning to the west and toward the cement slab. As the truck was attempting to pass Garrold, who had reached the culvert, the boy hit a rough spot on the shoulder and fell from his bicycle. He fell toward the truck and, while there is some controversy as to what resulted, there can be no question his head or shoulders collided with the truck, probably its right rear dual wheel, and that he suffered injuries which resulted in his immediate death.

In support of their position on the questions now under consideration much stress is placed by appellants on a claim, heretofore rejected. Indeed in their brief they state:

"The defendants' theory is that the plaintiffs claim in their petition, in clean-cut unmistakable language, that their son was *struck* by the truck and thereby *killed by the truck* of the defendants. . . ."

More weight is given to a claim that no allegations of negligence alleged in the petition sustained the answer "failure to yield enough

right of way," made by the jury to special interrogatory No. 9. We now direct our attention to that contention. As we do so it must, of course, be conceded, as appellants point out, that such finding acquits the appellants of all other acts of negligence charged in the petition.

Paragraph 6 (d) of the petition, which we repeat for purpose of emphasis, reads:

"That the defendant, Glen McMillan, drove the said truck on the said public highway without regard to the presence of the plaintiffs' son and negligently failed to turn the said truck to the left and thereby avoid hitting the said boy although the defendant had ample opportunity to do so."

Appellants insist the allegations just quoted do not support or uphold the finding that their negligence consisted in a failure to yield enough right of way. Conversely stated, they contend that such allegations are not broad enough to permit a finding of that character and that in effect it constitutes a finding of negligence other than that relied on by appellees for recovery.

It is, of course, true that a finding of negligence entirely different than the acts of negligence relied on in a petition will not sustain a general verdict. However, there is another rule equally applicable and well established. Under all our decisions (e. g., *Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 190 P. 2d 850; *Coryell v. Edens,* 158 Kan. 771, 150 P. 2d 341; *Waltmire v. Ford,* 147 Kan. 732, 78 P. 2d 893), special findings are to be liberally construed with the view of ascertaining their intended meaning and regardless of how unskillfully expressed they are to be given the meaning intended by a jury.

We are convinced that what the jury meant by its answer to finding No. 9 was that, as charged in the petition, the driver of the truck drove it on the highway without regard to the presence of appellees' son and negligently failed to turn it to the left and thereby avoid the collision resulting in his death. So construed such finding supports the general verdict and it necessarily follows the trial court properly overruled the motion to set it aside as well as the motion for judgment *non obstante.*

In view of the conclusions heretofore announced, the only question remaining is whether the collision was the proximate or legal cause of Garrold's death. Appellants insist that such cause was the hitting of the rough spot on the shoulder of the road and the resulting fall from his bicycle. Conceding that must have been one of the causes

we point out it was not the only cause. Appellants' driver could see and he was bound to know the hazards incurred in approaching boys while riding on bicycles. It was his duty (G. S. 1947 Supp. 8-538) to pass to Garrold's left at a safe distance. The fact the boy fell from the bicycle and into the passing truck does not compel the result for which appellants contend. Under the statute (G. S. 1947 Supp. 8-506) persons riding bicycles have the same rights and are entitled to the same protection as other persons in vehicles upon the highway. It cannot be denied the evidence as to whether the driver of the truck in attempting to pass did so at a safe distance is a controverted question. Under such circumstances, our decisions not only hold there can be more than one legal or proximate cause of the injuries resulting in Garrold's death, but that the question whether one of those causes was the negligence of the driver of the truck in attempting to pass him at an unsafe distance is a question of fact for decision by the jury (*Flaharty v. Reed*, 167 Kan. 319, 206 P. 2d 205; *Phillips v. Doyle*, 167 Kan. 376, 207 P. 2d 465).

We fail to find anything in the record which permits a reversal of the trial court's judgment. It is therefore affirmed.

PRICE, J. (dissenting): I am unable to agree with the majority opinion for the following reasons:

As I view it, the opinion misinterprets the plain theory of the truck driver's negligence as charged in the amended petition. The amended petition is clear and it plainly and repeatedly states the truck failed to slacken its speed in order to avoid "hitting the said plaintiffs' son"; the truck failed to turn to the left and thereby avoid "hitting the said boy," and the "truck hit plaintiffs' son." The opinion says the amended petition may be interpreted as an allegation that a collision occurred between the truck and the boy when he was thrown from his bicycle into the truck. If the action was tried on such a theory the pleadings were not amended to conform to the proof.

The jury did not find the truck struck the boy. The road was eighteen feet wide. The truck was eight feet wide. There is no claim that it contained any overhang in addition to that width. The jury found the distance between the truck and the boys riding on the bicycles was three and one-half feet when the truck was passing them (Finding No. 5). The truck therefore could not have hit the boy and it did not run over him (Finding No. 6). There

was no evidence the hole on the shoulder near the culvert reached into the portion of the shoulder on which the boys were traveling, and neither was there any evidence the "rough spot" which plaintiffs' son struck with his bicycle was or could have been visible to the driver of the truck in the exercise of reasonable diligence. The boy was having no apparent trouble or difficulty in riding his bicycle as the truck approached or when the front end of it passed him, but he did have difficulty before the truck completely passed him (Finding No. 8b and c). It is true that one of the other boys testified that as he glanced back it looked to him as if the back end of the truck hit the boy. However, the jury apparently took no stock in that testimony for it found the truck was three and one-half feet away (Finding No. 5) and that the boy's trouble was caused by hitting a "rough spot" (Findings Nos. 8 and 11). He was thrown off his bicycle (Finding No. 10), but not because of anything the truck driver did. Touching that fact we need not speculate for the jury settled the question by expressly finding what caused him to be thrown off his bicycle, namely, that he "hit a rough spot" (Finding No. 11). From these findings it is therefore clear there would have been no accident had the boy not been thrown from his bicycle and the cause of his being thrown from the bicycle was the proximate cause of his death.

The only negligence on the part of the truck driver found by the jury was his "failure to yield enough right of way" (Finding No. 9), whereas the real negligence charge was that the truck struck the boy, which, under the findings, it is conceded he did not do for the reason that the truck was at least three and one-half feet away from him when passing.

An examination of the facts of this very regrettable accident and the findings of the jury makes it clear to me that the proximate cause was the fact plaintiffs' son hit a "rough spot" which threw him from his bicycle, and I therefore dissent.

WEDELL, J., joins in the foregoing dissenting opinion.