Smith v. Tri-County Light & Power Co.

---

No. 26,391.

WILLIS E. SMITH, *Appellant*, v. THE TRI-COUNTY LIGHT & POWER COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. TRIAL—*Findings Inconsistent With General Verdict.* A motion for judgment on special findings of a jury, notwithstanding the general verdict, should not be sustained unless the special findings are so out of harmony with the general verdict that the latter cannot stand.

2. SAME—*Special Findings—Construction and Operation.* Certain special findings of the jury considered and held not to show contributory negligence as a matter of law, nor to be out of harmony with the other special findings and with the general verdict.

3. DAMAGES—*Evidence as to Value—Conclusiveness.* When a barn, destroyed by fire, is fully described in the evidence, the fact that witnesses placed a value upon the barn does not require the jury to fix that value in the verdict.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed January 9, 1926. Reversed.

*S. S. Alexander* and *C. C. Calkin,* both of Kingman, for the appellant.
*Clark A. Wallace,* of Kingman, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by Willis E. Smith against the Tri-County Light & Power Company for damages for the loss of a barn and contents caused by fire, alleged to have resulted from negligence of defendant. It was tried to a jury, which answered special questions and returned a general verdict for plaintiff. Defendant's motion for judgment in its favor on the special findings, notwithstanding the general verdict, was sustained, and plaintiff has appealed.

---

Evidence, 22 C. J. p. 729 n. 75, 77. Trial, 38 Cyc. pp. 1926 n. 27, 1929 n. 93, 1930 n. 2; 24 L. R. A. n. s. 72; 27 R. C. L. 79.

Defendant has a transmission line from Conway Springs—where it gets its electric current from another company—to Norwich, and supplies that town and two others with electricity. Plaintiff resides on a farm a mile east of Norwich. He and a neighbor desired to get electricity for lighting their premises from defendant's transmission line which passed their places. Plaintiff took the matter up with Mr. Howard, an officer of the defendant company, and an arrangement was made by which a transformer was installed, to reduce the voltage from 13,200, carried by the transmission line, to 110, suitable for lighting plaintiff's premises. Plaintiff's house and barn were wired, and he began taking electricity from defendant sometime in 1919. The charge made was $2 per month plus the current used, which was charged at the same rate as to subscribers in town. On the afternoon of April 24, 1924, fire started at the house and at the barn where the wires entered. This was discovered at once, and the fires put out before much damage resulted. Defendant learned of this in some way and the current was cut off at Conway Springs. Defendant's representative, Mr. Tucker, went to plaintiff's place, examined the wiring at the barn and at the house, and told plaintiff's wife it was safe to use the electricity, and she could use it or not, as she pleased. Later in the day—just what time is not clearly shown—the current was again turned on at Conway Springs. About ten o'clock that night plaintiff's barn caught fire and burned, with its contents. Plaintiff sued for the loss, which he alleged resulted from negligence of defendant in not properly installing the transformer and keeping it in repair, by reason of which the high voltage of the transmission line was carried on the light wires. Defendant's answer denied any negligence on its part, and averred that plaintiff was guilty of contributory negligence in failing to properly install and keep in repair the transformer and other paraphernalia leading from the transmission line to his house and barn. One of the principal questions upon the trial was whose duty it was to install properly and keep in repair the transformer and other apparatus. There seems to be no serious contention now, if there ever was, that the fire which destroyed the barn and its contents was not caused by the high voltage of electricity of the transmission line being carried through defective apparatus over the light wires, which were not designed to carry such heavy voltage, to the barn. The main question is, Who is to blame for

Smith v. Tri-County Light & Power Co.

that defective condition? Upon this question there was much conflicting evidence. Since the judgment was based upon the special findings, it is not necessary to summarize the evidence at length. The jury answered special questions as follows:

"1. If you find the transformer in question was defective at the time of and immediately prior to the fire which destroyed plaintiff's barn, was such defective condition probably caused by lightning? A. Yes.

"3. Did the plaintiff, Smith, after the four o'clock fire direct Tucker to fix up or repair the defects in the transformer or house or barn wiring so that plaintiff could safely have lights? A. Yes.

"5. Did Witness Tucker fix burned out wires and broken insulator at barn or repair said wiring defects at house after four o'clock fire? A. No.

"6. Did Mrs. Smith, wife of plaintiff, tell Tucker after four o'clock fire, in substance, that she was afraid of the electricity and that she did not want wires repaired or fixed up? A. Yes.

"7. Do you find that the defendant company had any actual knowledge of an excessive voltage passing through said plaintiff's transformer prior to the occurrence of said ten o'clock fire? A. No.

"10. If your verdict is for the plaintiff, state fully the items or acts of negligence on the part of said defendant upon which you base your verdict. A. Defendant did not properly and safely install transformers as contracted between Howard, an officer of defendant, and Smiths.

"11. (Itemized the loss.)

"12. Did plaintiff have, at and after the afternoon fire, a stick or contrivance for safely pulling the transformer switch? A. Yes.

"13. Could plaintiff have pulled the transformer switch after the afternoon fire and thereby prevented excess voltage from entering his house and barn? A. Yes.

"15. Was there any ground wire installed on this pole where the transformer was situated at the time of and immediately before the first fire on April 25, 1924? A. No.

"15½. Did the defendant company wrongfully, carelessly and negligently fail to maintain a ground wire on or near the pole where the transformer was situated, connecting the transformer or wiring in connection therewith to the ground at the times of the fires on April 25, 1924? A. Yes.

"16. At the times of the fires in question on April 25, 1924, did the defendant company maintain this transformer in a careless and negligent manner in that defendant company failed to install or have installed about such transformer, safety devices, wiring and apparatus in such a manner as to prevent an excess voltage of electric current from entering the house and barn of the plaintiff? A. Yes.

"17. If N. E. Tucker had made a reasonable investigation which an ordinarily prudent electric lineman under similar circumstances would have made would he have discovered the defective condition of the transformer or the wiring in or about the transformer that existed after the four o'clock fire on April 25, 1924? A. Yes.

"18. If N. E. Tucker had properly remedied the defect if any, existing in the transformer after such four o'clock fire on April 25, 1924, or if he had disconnected or isolated such transformer from the plaintiff Smith's house and barn, would plaintiff Smith have suffered the damages which occurred on the night fire of April 25, 1924? A. No.

"19. Did Mr. Tucker learn in the afternoon of April 25, 1924, that some defect existed in the wiring or equipment that caused danger of fire breaking out in the barn of plaintiff? A. Yes.

"20. If you answer the next preceding question in the affirmative, then state what precautions were taken by the company, if any, to ascertain and remedy or remove the cause which might again result in the breaking out of fire in the buildings of plaintiff? A. Turned off current.

"21. After learning of the fact that a danger of fire existed in the afternoon of April 25, 1924, by the said Mr. Tucker, did he tell plaintiff, or members of his family that it was safe for them to use the electric current, if they so desired? A. Yes.

"22. If you find that the injury sustained by plaintiff Smith on April 25, 1924, was the result of any contributory negligence on Smith's part, then state what such negligence on Smith's part consisted of. A.

"23. Was one N. E. Tucker the agent of the defendant company on April 25, 1924? A. Yes.

"24. Did defendant company acting through its agents and employees, install the transformers on this pole near plaintiff's house? A. Yes.

"26. Did plaintiff Smith and defendant company enter into a verbal agreement that defendant company would install, care for and look after the transformers on the pole where such transformer was situated? A. Yes."

The general verdict was for plaintiff in the sum of $1,156. Defendant moved to set aside special findings of the jury numbered 9, 14, 23 and 25. The court sustained the motion as to findings numbered 9, 14 and 25, but overruled it as to finding number 23. Defendant then moved for judgment in its favor upon the answers to the special questions, notwithstanding the general verdict. This motion was sustained; plaintiff complains of that ruling. When a motion is made for judgment on the special findings, notwithstanding the general verdict, the rule, of course, is that the special findings shall be considered in such a way as to harmonize them with each other and with the general verdict, if that can reasonably be done. (*Calvin v. Schaff, Receiver*, 118 Kan. 196, 200, 234 Pac. 1006, and cases there cited.) If this cannot be done, *i. e.*, if the special findings are so inconsistent with the general verdict that both cannot stand, the general verdict must be set aside. Now, looking at the special findings, what is there in them that is so inconsistent with the general verdict as to defeat it? Our attention is called to special findings numbered 12 and 13, in which the jury found that

plaintiff at and after the afternoon fire had a stick or contrivance for safely pulling the transformer switch, and that he could have pulled the switch that afternoon and thereby prevented excess voltage from entering his house and barn, as findings of contributory negligence on the part of plaintiff which defeated his recovery as a matter of law. This view is incorrect for two reasons: First, defendant pleaded specific acts of contributory negligence, but did not plead this, and is not therefore entitled to rely upon it. But passing that, for it is possible the pleadings might have been construed as having been enlarged so as to raise this question, the *second* reason is that these findings do not, under the facts in this case, constitute contributory negligence as a matter of law. The evidence pertaining to that matter was that when the transformer was first installed, some four or five years before the fire, a long stick was left lying on the ground near the transformer which could be used to reach up and screw into the plug on the transformer and pull it out, thus disconnecting the current. There is no evidence that plaintiff was ever instructed in its use or ever used it. One unfamiliar with electricity, as the evidence shows plaintiff to be, might well hesitate to undertake to use this stick in the way it was designed to be used, especially when he had reason to believe, because of the afternoon fire, that there was something wrong with the transformer. The fact that he did not use it under these circumstances would, at best, be a question for the jury to determine whether it amounts to contributory negligence. It is clear the jury did not regard it as amounting to contributory negligence on his part, for they failed to answer special question No. 22, and the fact that they returned a general verdict for plaintiff imports a finding of no contributory negligence on his part.

Upon the main question at issue, as shown by the pleadings, as to who installed this transformer and whose duty it was to see that it was properly installed and properly kept in repair, the answers of the jury are favorable to the plaintiff and against the defendant. Defendant in this court has reargued many of those questions, but we shall not examine the evidence to see whether or not those findings were correct in view of the fact that, as to most of them, there was not even a motion on behalf of defendant to set them aside, and they have been approved by the trial court. The result is that there is nothing in the special findings so out of harmony with the general

verdict as to require or to authorize the court to set the general verdict aside.

Plaintiff raises one other question. He moved for a new trial upon the amount of damages only. This was overruled. Upon this point his contention is that all of the evidence before the jury fixed the value of the barn burned at $2,000, while the jury found its value to be $900. It is true that each witness who placed a value upon the barn in his testimony, placed such value at $2,000, but that is not all of the evidence before the jury as to the value of the barn. Its description was given in detail. Its size, the material of which it was built, the fact that it had been built seventeen years, all furnished ground upon which the jury could base a judgment as to its value, even though no witness had stated a specific sum as to the value. While the jury might have found a different value on the barn, they had evidence to sustain the finding which was made.

The judgment of the court below will be reversed with directions to enter judgment upon the general verdict of the jury.