No. 37,677

Arthur S. Stevens, *Appellant*, v. Schuyler Jones, Jr., *Appellee.*

(215 P. 2d 653)

Opinion filed February 28, 1950.

*Paul R. Kitch,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for the appellant.

*W. A. Kahrs,* of Wichita, argued the cause, and *Paul H. White, Robert H. Nelson, Clarence N. Holeman* and *Keith L. Wallis,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This was an action to recover damages for injuries sustained as a result of a collision between two automobiles at a highway intersection in which the plaintiff failed to recover and judgment was rendered in favor of the defendant. The appeal is from an order overruling the plaintiff's motion for a new trial.

U. S. Highway 81, a four-lane paved highway, hereinafter referred to as the highway, runs north and south through Sedgwick county. Thirty-fifth street, hereinafter referred to as the road, is a dirt and gravel road running east and west. The two thoroughfares intersect a short distance north of the City of Wichita. Approximately 70 feet east of the east edge of the highway, and running parallel thereto, is the west track of the Santa Fe Railroad. This track and others to the east, covering a distance of approximately 20 feet, are level but on a higher elevation than the highway. The traveled portion of the road slopes gradually upward from the highway to the railroad tracks, crosses such tracks and then slopes gradually downward toward the east. There is a stop sign at the east edge of the highway requiring all traffic approach-

ing from the east on the road to stop before entering the highway.

On March 1, 1947, at about 7:30 in the morning the highway, and at least that portion of the road between the highway and the railroad tracks, were covered with a thick coat of ice. Defendant was driving along the road in a westerly direction in a Lincoln sedan and approaching the highway. After crossing the tracks he started down the slope to the west. As he did so he applied his brakes for the purpose of stopping at the stop sign but they failed to hold and his automobile slid down the incline and entered the highway without stopping at the sign. He knew he was approaching a through highway. He knew he was required to stop before entering it and at all times material to the issue he could and did see the vehicles traveling thereon, including the truck with which he later collided. Indeed, he testified that when on the railroad tracks he saw such truck about 200 feet away approaching the intersection. Plaintiff was driving a Chevrolet delivery truck in a northerly direction along the east lane of the highway. He knew the pavement was icy. He first saw the defendant's automobile when it was east of the railroad tracks. He kept the car in his vision and when he saw it was not going to stop at the stop sign he applied his brakes but failed to stop before there was a collision between his truck and the defendant's automobile. He admitted he was unable to stop his truck because of the icy condition of the highway. As a result the right front fender of the Chevrolet and the left front fender of the Lincoln met in the intersection at a point about even with the center of the road (35th street) and approximately four paces west of the east edge of the paved portion of the highway and the plaintiff sustained severe personal injuries.

So much for the undisputed factual situation disclosed by the record. With evidence to support it and other evidence relating to the speed at which the respective parties were traveling, which we pause to add, was highly conflicting but does not require specific attention unless and until it becomes important in disposing of questions raised on appeal, the cause was submitted to a jury which returned a general verdict for the defendant and answered special questions as follows:

"Q. 1. At what speed was the Plaintiff proceeding? (a) When he first saw the Defendant's car? A. 35 mph. (b) At the time of the collision? A. 25 MPH.

"Q. 2. Was the accident unavoidable? A. No.

"Q. 3. Was the failure of the defendant to stop his car at the stop sign due to the skidding of his car on ice and snow on the incline? A. Yes.

"Q. 4. Was the skidding of the Defendant's car due to any negligence on the Defendant's part? A. Yes.

"Q. 5. If you answer the foregoing question in the affirmative, then state what act or acts on the part of the Defendant contributed to such negligence? A. Failure to observe the highway on the incline, directly in front of his car.

"Q. 6. What, if anything, prevented the Plaintiff from continuing North on Broadway in the east lane of the four-lane highway? A. Plaintiff had calculated on avoiding collision by pulling to the left and had no time to change direction.

"Q. 7. Was the defendant guilty of any negligence which was the direct and proximate cause of said collision? A. Yes.

"Q. 8. If you answer the foregoing question in the affirmative, then state what acts of negligence you find the Defendant guilty of? A. Running stop sign.

"Q. 9. Was the Plaintiff guilty of any negligence which was the proximate cause or contributed to the collision? A. Yes.

"Q. 10. If you answer the foregoing question in the affirmative, then state what acts of negligence you find the Plaintiff guilty of? A. Driving too fast for the condition of the highway.

"Q. 11. If you find that Plaintiff was guilty of contributory negligence then state what such negligence consisted of? A. Driving too fast and not protecting himself from shifting of his load in case of sudden stop from any cause.

"Q. 12. Did the Defendant stop at the stop sign? A. No.

"Q. 13. Should Defendant have anticipated the presence of the ice in the exercise of reasonable care? A. Yes.

"Q. 14. Could a reasonably prudent person have seen the ice on the incline if he had looked? A. Yes.

"Q. 15. Should defendant in the exercise of reasonable care have stopped on the railroad tracks before attempting to descend? A. No."

Following return of the foregoing findings plaintiff moved for a new trial on the question of damages only on the ground that under the facts found by the jury the defendant was guilty of negligence and the plaintiff was free from contributory negligence as a matter of law, thus leaving only the amount of plaintiff's recovery in issue. This motion, which was denied, contains all the elements of and must be regarded as tantamount to a motion for judgment *non obstante veredicto*. The mere fact that if it had been sustained the jury would still be required to fix the amount of damages does not change its status. Therefore, under the well established rule (see *Smith v. Tri-County Light & Power Co.*, 120 Kan. 123, 241 Pac. 1090; *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 139 P.

2d 859; *Long v. Shafer,* 162 Kan. 21, 174 P. 2d 88; *Hubbard v. Allen,* 168 Kan. 695, 215 P. 2d 647, this day decided) plaintiff concedes the special findings are supported by evidence for purposes of appellate review of the trial court's ruling on the motion and like review of all contentions advanced by him with respect to legal questions inherent therein.

Appellant's principal contention on appeal is that the acts of negligence found against him could not possibly have been a proximate cause of the collision. This claim is nothing more than a reassertion of what he sought to accomplish by his motion for judgment. In attempting to maintain his position he devotes much time to matters pertaining to the force and effect to be given the evidence. Since, as we have pointed out, he must stand or fall on the findings as made we are not concerned with matters of that character and they will be given no further attention. The pure legal question he does advance is that the jury's answer to question No. 9 is inconsistent with the general verdict because the acts of negligence found against him by findings Nos. 10 and 11, could not be a proximate cause of his injuries as a matter of law. We are not impressed with appellant's argument in support of this position and do not propose to labor it further than to say he insists speed could not be a proximate cause of the involved collision. The short and simple answer is that the jury not only found he was driving too fast but also that he was driving too fast for the condition of the highway and that he is bound by both answers.

It is true, as appellant asserts, that we have repeatedly held (see, *e. g., Goodloe v. Jo-Mar Dairies Co.,* 163 Kan. 611, 619, 185 P. 2d 158; *Crawford v. Miller,* 163 Kan. 718, 186 P. 2d 116; *Gabel v. Hanby,* 165 Kan. 116, 193 P. 2d 239) that mere violations of our statute (G. S. 1947 Supp. 8-532, *et seq.*) regulating traffic, such as excessive speed, driving at a speed greater than is reasonable and prudent under the conditions then existing, or other matters of a similar nature, are not sufficient to make the driver of an automobile guilty of negligence. However, those same decisions all hold that is the result where it appears from the evidence that such violations contributed to the accident and were the proximate or legal cause of the injuries therein received. Here the jury found the appellant guilty of violations of our statute regulating traffic on the highway. It also found those violations contributed to and were the proximate cause of the collision in which he sus-

tained his injuries. Under such conditions there is no sound basis on which appellant's claims, the special findings are inconsistent with the general verdict and that the negligence found by the jury could not be one of the proximate causes of the collision, can be sustained. Conceding the appellee was also negligent, that his negligence was of the same type and character as the appellant's, and that the jury so found, does not change the result. Under our repeated decisions (*Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 950; *Morrison v. Hawkeye Casualty Co.,* 168 Kan. 303, 312, 212 P. 2d 633, and cases therein cited) there can be more than one legal or proximate cause of an accident.

Another ground urged for reversal of the judgment is that the trial court erroneously instructed the jury on the question of appellant's contributory negligence. We shall not attempt to detail the instruction complained of. The record discloses the trial court did read such instruction to the jury. However, it also reveals that at the close of the reading of all the instructions this particular instruction was withdrawn and that another instruction on the same question was submitted in lieu thereof. No complaint is made as to the propriety of the substituted instruction. With the record in that state, assuming the first instruction was erroneous, we cannot say the trial court's action in reading it to the jury before it was withdrawn constitutes reversible error.

Finally, appellant insists the court erroneously refused him permission to explain his reasons for making an alleged written admission—a sheriff's report—as to the speed at which he was traveling immediately prior to the collision. This written instrument was offered in evidence by appellee on cross-examination of appellant when he admitted its execution and after he had testified on direct examination as to his rate of speed at the time in question, obviously for impeachment purposes. The statement was to the effect appellant's speed was thirty-five miles per hour whereas he had just testified that it was from twenty to thirty miles. It will not be necessary for us to here decide whether on redirect examination the trial court should have permitted appellant to give his reasons for signing the instrument and his explanations for the language used therein over the appellee's objection. The record reveals an extended colloquy between court and counsel for the respective parties in the presence of the jury respecting the admissibility of such evidence. During the discussion the jury was

fully apprised of the fact that appellant was claiming he had signed the statement at the direction of an officer who advised him to put down thirty-five miles per hour since that rate of speed was not in excess of the highway speed limit and it would make no difference. Among others the following statements were made:

"The Court: Of course, the Sheriff would have no authority to put down 35 on 95 or any other figure.

"Mr. Kitch [Appellant's counsel]: The Sheriff told him as long as he was going not over 35 that is all he wanted to know."

Further resort to the record discloses that during the course of appellant's redirect examination he was asked by the court if the figure 35 as it appeared in the statement was in his handwriting, to which he replied, "That is what I was told to put down there." From the same source it appears that the trial court, over appellee's objection, permitted the answer to stand and go to the jury for its consideration. Thus it appears, although not in the exact form he desired, appellant was permitted to give his reasons for making the statement and to explain why he had there stated that his speed at the time of the accident was thirty-five miles per hour. But that is not all. During the argument of the cause his counsel discussed this particular feature of the case at some length, called the jury's attention to the fact a special question had been submitted with respect to the speed at which appellant was driving and stated that as far as he was concerned if the jury wanted to answer the question "35 miles per hour" it would be perfectly all right as it did not make a bit of difference on the legal problem involved.

Under the conditions and circumstances heretofore related we do not think it can be said the appellant has made it affirmatively appear that the trial court's action in limiting his testimony on this particular subject was such an error as affected his substantial rights. In view of the record, if it was error at all, it must be regarded as technical.

In this jurisdiction technical errors which do not affirmatively appear to have prejudicially affected the substantial rights of parties are not grounds for reversal of a judgment (see G. S. 1935, 60-3317; *Jacobs v. Hobson*, 148 Kan. 107, 79 P. 2d 861; *Morrison v. Hawkeye Casualty Co.*, 168 Kan. 303, 309, 212 P. 2d 633, and the authorities therein noted).

We find nothing in the record or in the contentions advanced by appellant to warrant a reversal of the judgment. In conclusion it

should perhaps be stated that we have reviewed the evidence, although the appellate issues do not require it, and are convinced this is primarily a fact case wherein the question of appellant's contributory negligence was one on which reasonable minds might differ. Therefore, under all our decisions, such question was properly submitted to the jury (*Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49; *Fisher v. Central Surety & Ins. Corp.,* 149 Kan. 38, 86 P. 2d 583; *Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470; *Walton v. Noel Co.,* 167 Kan. 274, 205 P. 2d 928) and its findings with respect thereto preclude appellant's recovery. (See, *e. g., Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 384, 109 P. 2d 850.)

The judgment is affirmed.