HARRIS v. HUGHES.

No. 21973.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for appellant.

Solbert M. Wasserstrom, Francis L. Roach, Kansas City, for respondent.

DEW, Judge.

This action was brought by the plaintiff to recover damages for alleged personal injuries which he claimed to have sustained while riding as a guest in an automobile when it collided with an ambulance owned by the defendant. The verdict and judgment were for the plaintiff in the sum of $2,500. The defendant has appealed.

The substance of plaintiff's amended petition is that on February 21, 1950, at about 11:45 p. m. plaintiff was returning to Kansas City, Missouri from Leavenworth, Kansas, where he had ridden as a guest with two other passengers and the owner of the automobile, L. C. Linzy; that when proceeding southward about five miles south of Lansing, Kansas, the defendant's ambulance, coming from the south on Kansas Highway 7 and operated by an agent of defendant in the scope of his employment, was driven into and collided with the automobile in which plaintiff was a passenger, with great force and violence, as the approximate result of which plaintiff was personally injured in the respects set forth. It is further averred, among other specifications of negligence, that the driver of the ambulance violated Section 8–537, General Statutes of Kansas, 1949, in that defendant's ambulance was trav-

eling and was caused and permitted to be on its left side of the highway at the time and place in question. The statute of Kansas referred to was set forth as follows:

"8-537. Drive on right side of roadway; exceptions. Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: (1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement; (2) when the right half of a roadway is closed to traffic while under construction or repair; (3) upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or (4) upon a roadway designated and signposted for one-way traffic".

The answer of defendant, in substance, admitted ownership of the ambulance and that at the time of the accident the driver was his agent and acting within the scope of his employment; and admitted the statute of Kansas, as pleaded, but denied all other material allegations of the petition. Further the answer pleaded contributory negligence on the part of the plaintiff in that he failed to keep a lookout for other vehicles on the highway, and failed to warn the driver that the approaching ambulance was being operated upon the wrong side of the highway. It is further alleged in the answer that if the plaintiff was injured, as alleged, that it was due to the negligence of L. C. Linzy, who failed to exercise due care in the operation of his vehicle, failed to keep it under control, failed to keep a lookout for other vehicles, particularly said ambulance, operated his vehicle on the left or wrong side of the highway in violation of the same statute alleged in the petition, and was guilty of other acts of negligence specified.

Plaintiff's evidence tended to show that on the evening of the accident, L. C. Linzy invited the plaintiff and one Mrs. Clark to accompany him and his wife in his car on a pleasure ride from Kansas City, Missouri, to Leavenworth, Kansas; that when they started to return from Leavenworth, some snow began to fall and some drizzle, which made the highway slick; that the snow increased in intensity although the highway could be seen and the white dividing line in the center was visible. Plaintiff alone occupied the rear seat. As they approached a point about a mile south of Lansing, Kansas, Mrs. Clark, who sat on the front seat with the driver and his wife, called out that a red light was approaching; that Linzy began to slow up his automobile and finally stopped it entirely, and at that time was wholly on the west or right-hand side of the highway, but the ambulance with the red light shining, continued to approach without diminishing its speed of 55 to 60 miles an hour and crossed the center line and ran into the front of plaintiff's automobile; that after the accident the ambulance was standing across the middle of the highway and the Linzy automobile was on the west half of the highway headed in a southeasterly direction. The plaintiff stated that the vehicles were not moved until the sheriff arrived at the scene of the accident. The plaintiff testified that the impact caused his head to be thrown against the ceiling of the automobile and his chin to hit down against the back of the front seat, breaking his jaw, and causing him other injuries. L. C. Linzy testified that at the place of the accident the highway was sufficiently wide for each car to have passed and to be completely on the concrete and without touching each other.

According to the evidence produced by the defendant, the driver of his ambulance was experienced and had traveled over this route many times and on this occasion had a sick patient in his ambulance, whom he was taking to the Wadsworth Hospital near Leavenworth; an attendant also in the ambulance was asleep; that the ambulance was being driven at the time only about 12 or 15 miles an hour because of the sick patient being transported therein; that the highway was not slick nor did the snow interfere much with his visibility. The defendant's driver testified that he first saw the lights of the Linzy automobile

when it appeared to be coming from a stopped position about 75 to 100 feet from him and on the west side of the highway heading southeast; that it continued toward him at 25 or 30 miles an hour and he drove his ambulance onto the east shoulder and stopped, but that the Linzy car came over to the east lane until its left fender hit the left fender of the ambulance. The driver of the ambulance ran to a nearby farm house, called the sheriff, and called a tow car. He returned to the scene of the accident and saw, among other cars blocked by the accident, an Oklahoma ambulance, and engaged it to take his patient to the hospital at Wadsworth, and the injured parties to Leavenworth. A deputy sheriff testified that when he arrived at the place of the accident the defendant's ambulance was on the east side of the highway and was partially off on the east shoulder, and that the Linzy automobile was against the ambulance. He said he talked with Linzy, who said that he saw the ambulance approaching, but his (Linzy's) automobile was sliding and that he could not avoid running into the ambulance, which was in its proper lane.

The first assignment of error is that the verdict is against the weight of the evidence, and that the court erred in overruling the defendant's motion for a new trial. From the foregoing it is obvious that there was evidence tending to sustain the material facts alleged in the plaintiff's petition and the weight of the testimony was a matter for the jury to determine.

Defendant's next contention is that the court erred in permitting witness Linzy to testify as to a statement claimed to have been made by defendant's driver at the place of and following the accident, for the reason that such a statement was hearsay and not part of the res gestae.

In the course of the testimony of L. C. Linzy, in behalf of plaintiff, he was asked by plaintiff's counsel if, after the accident, he had any conversation with the driver of the ambulance and the answer was in the affirmative. Objection by defendant was made on the ground that the driver of the ambulance was not a party to the lawsuit and that the conversation referred to, if any, would be hearsay. Plaintiff's counsel assured the court that it would be part of the res gestae, since it took place right at the time of the accident. It was insisted by defendant's counsel that there had been no foundation laid to the effect that the driver was under the influence of the accident or that his statements were not merely voluntary remarks. The objection was overruled and Linzy was again directed by plaintiff's counsel: "Go ahead, L. C., and tell the Judge and jury what was said back and forth, and at that time, right after the accident occurred". Objection being again made and again overruled, the witness said: "After the ambulance had hit me I gets out of my car. The ambulance driver, we meets up. He told me—I asked him did he see me. He said no, he couldn't help from hitting me. So I walks over to his ambulance, and he told me that he had a patient in there, and he goes back to my car and that's when he asked me if my people was hurt, and so I asked them where could I make a phone call. That's when I went up to this—".

Later, during the course of defendant's evidence, and upon questioning by defendant's counsel, defendant's driver testified he did have a conversation with Linzy, in which Linzy told him he (Linzy) had hit the ambulance when it was standing still on its right half of the highway, and that it was entirely his (Linzy's) fault. The witness, however, could not say whether this conversation was before he left to call the sheriff or after he returned to the scene of the accident, but that he had told the parties in Linzy's car to stay in the car until he could summon help.

Much has been written in the decisions of this state on the subject of res gestae. In the frequently cited case of Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, this exception to the hearsay rule of evidence is exhaustively treated. In that opinion the theory, purpose, nature, elements, exceptions and application of the

principle of res gestae are generally reviewed and its construction so far as the courts of this state are concerned is pronounced. Emerging as the main element essential to the admission of evidence under the rule is spontaneity. All else is material only in so far as it tends to prove or disprove spontaneity. See, also, Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918 and Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299. It is the burden of the party offering such evidence to establish the surrounding conditions which permit the application of the rule. Obviously, the res gestae principle may apply under the record in one case and may not in another, depending on the evidence adduced. If there is evidence of external circumstances, which from experience, would tend to create in a person a shock, physical or mental, producing in him a nervous excitement which, in turn, would still the faculties of reflection and consideration of self-interest, so that the pertinent utterances of such a person at the time and place made are not dominated by such controls, the law will attach to such statements an element of trustworthiness sufficient to receive them in evidence as the speaker's true belief as to the matters so uttered. Sconce v. Jones, supra; Legger v. Great Northern Life Ins. Co., Mo.App., 216 S.W.2d 106; Wigmore on Evidence, 3d Ed., Vol. 6, page 135, Section 1747(1).

In the instant case there was evidence that certain facts existed at the time the defendant's driver is claimed to have made the alleged statement in question, which facts affect the admissibility of the statement in evidence. The ambulance driver was en route to the hospital, where he was taking a sick patient for whose safety he was responsible; it was a dark, wintry night, the highway was slick and because of the snowstorm the visibility was poor; his ambulance had collided violently with an automobile containing several passengers, and the cars were knocked at random on the highway; while he himself was not physically injured in the collision he was "concerned" about his sick patient, and whether any of the people in the other car were injured. He was confronted with the sudden problem of transportation of his sick passenger and the injured parties to hospitals, and the responsibility of reporting the emergency to the legal authorities. The other driver (Linzy) said: "After the ambulance had hit me I gets out of my car. The ambulance driver, we meets up. He told me—I asked him did he see me. He said no, he couldn't help from hitting me. So I walks over to his ambulance, and he told me that he had a patient in there, and he goes back to my car and that's when he asked me if my people was hurt, * * *". The inference is that this conversation thus took place almost immediately after the collision. Under such circumstances it is our conclusion that the court properly admitted evidence of such conversation.

In a case factually quite similar on a like issue, the court approved the admission of a similar statement in evidence. Sullivan v. Kansas City Public Service Co., Mo.App., 231 S.W.2d 822, 826. There was evidence in that case that immediately after a bus was permitted to roll backward and to injure the plaintiff, the defendant's operator alighted, approached the plaintiff and told him that the brakes did not hold. It was held that "if the statement was made, as plaintiff stated (and it was for the jury to determine that matter), the testimony was admissible as a part of the res gestae. (Citations.)". Likewise, in Billingsley v. Kansas City Public Service Co., 239 Mo. App. 440, 191 S.W.2d 331, 334, wherein there was evidence that defendant's motorman had just alighted from his street car after a collision with an automobile, and stated to bystanders that "he did not see the automobile until he was upon it", and that the automobile approached the track at a rapid rate of speed and "'was almost on the track before he saw it'". These statements were admitted and approved as a part of the res gestae.

Lastly, defendant claims error in the giving of Instruction 1 on plaintiff's be-

half, because it assumed negligence on his part. That instruction was as follows:

"The Court instructs the jury that at the time when and the place where the ambulance and the automobile mentioned in the evidence came into collision with each other, the law of Kansas imposed upon the driver of a motor vehicle a duty to drive upon the right half of the roadway, provided the roadway was of sufficient width to so permit.

"'And so if you find and believe from the evidence that defendant's said ambulance was being driven by Thomas Joseph Bradley in a northerly direction on Kansas Highway Number 7, south of Lansing, Kansas, at about 11:45 P.M. on or about February 21, 1950, and if you further find from the evidence that said Bradley at said time and place was an employee of defendant and was then and there acting within the scope of his employment on behalf of defendant, and if you further find that plaintiff was a passenger in an automobile being driven on said highway at said time and place by L. C. Linzy in a southerly direction, and if you further believe and find from the evidence that at said time and place defendant's said ambulance collided against the said automobile in which plaintiff was a passenger, and if you further find from the evidence that said highway was a roadway in Kansas and was at the place of collision of sufficient width to permit said Bradley to drive upon the right or east half of the said highway, and if you further find from the evidence that said Bradley failed to drive on the east half of said highway but instead drove onto the west half of said highway and came into collision with the automobile in which plaintiff was a passenger, then such failure, if any, of said Bradley to drive on the east half of said highway was negligence on his part and on the part of the defendant; and if you find from the evidence that as a direct con-

sequence of such negligence above specified, if any, plaintiff was injured, and at the time plaintiff was in exercise of ordinary care for his own safety, then you will find for the plaintiff and against the defendant Lawrence V. Hughes'".

Defendant asserts that the ultimate fact of negligence is usually a matter for the jury's determination, to be based on certain essential facts to be submitted; that the above instruction merely told the jury, in effect, that if defendant's driver failed to drive on his right half of the highway when it was unobstructed, that such conduct was negligence on his part and on the part of defendant; that the time and place of such failure in relation to the time of collision was not taken into consideration; that the instruction makes it appear that defendant's agent was driving on the wrong side of the highway voluntarily. The defendant further argues that the instruction on the matter of negligence should have more fully hypothesized the facts as to negligence since the evidence as to same was directly controverted. He cites Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, and Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972.

It may be said, incidentally, that plaintiff first makes the point in reference to this instruction that it was referred to in the motion for new trial as Instruction "A", which was given at defendant's request, and plaintiff questions whether the objection to it is preserved. It is clear that Instruction "1" was intended and that the error was inadvertent. Plaintiff, in fairness to the court, has admitted that under similar circumstances it was held that the objection to an instruction intended was sufficiently preserved. Shinn v. United Rys. Co., 248 Mo. 173, 154 S.W. 103. We rule that the point raised should be considered as preserved for our review.

Stripped of its verbiage not essential to consideration of the point raised, the instruction, in substance, tells the jury that if the plaintiff was traveling southward on the highway in the exercise of ordinary care

for his own safety, and if defendant's ambulance approaching from the south, drove onto the west half of the highway when such highway was of sufficient width to permit it to pass on the east half of the roadway, and collided with the Linzy automobile, defendant was negligent, and if such negligence directly resulted in plaintiff's injuries, while he was in the exercise of ordinary care for his own safety, the verdict should be for the plaintiff.

Plaintiff insists that the instruction meets the requirements of the Yates and Knight cases, supra, as to hypothesis. As to assumption of negligence he cites Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748, 2 A.L.R.2d 1292; Loveless v. Berberich Delivery Co., 335 Mo. 650, 73 S.W.2d 790, and other similar cases. These latter authorities are not applicable on that issue because in such cases either the instructions expressly submitted to the jury the question of whether the conduct described in the instruction constituted negligence, or the local statute so declared. The essential inquiry here is whether the facts stated in the instruction at hand, if found true, are sufficient to constitute negligence under the laws of Kansas. Since each party pleaded the Kansas statute and each tried the case on the theory that the other violated the Kansas statute, we look to the laws of that state on the question of what the law required of the defendant at the time and place in question in the operation of his ambulance. Hall Motor Freight v. Montgomery, supra, 357 Mo. at page 1194, 212 S.W.2d at page 752.

The law of Kansas in such cases is succinctly stated in Goodloe v. Jo-Mar Dairies Co., 163 Kan. 611, 618, 185 P.2d 158, 165. In discussing two canons of the law of negligence the court said that: "Negligence is not actionable unless it is the proximate cause of injury * * *", and that: "The other, similar in character, but having particular reference to recovery of damages for injuries sustained in motor vehicle collisions, is that mere violations of an ordinance or statute regulating traffic, such as excessive speed, defective equipment, driving down the center of the highway, or other matters of a similar nature, are not sufficient to make the driver of an automobile guilty of actionable negligence in an action involving a collision unless it appears from the evidence that such violations contributed to the accident and were the proximate cause of the injuries therein received. (Citations.)" Later cases so holding are Crawford v. Miller, 163 Kan. 718, 721, 186 P.2d 116; Flaharty v. Reed, 167 Kan. 319, 320, 205 P.2d 905. It was pointed out in the Flaharty case, supra, 167 Kan. at page 323, 205 P.2d at page 908, that: "The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act".

In Stevens v. Jones, 168 Kan. 583, 215 P.2d 653, it is again stated that mere violations of the statute regulating traffic are not sufficient to make a driver of an automobile guilty of negligence but would do so if it appears that such violations contributed to the accident and were the proximate cause of the injury therein received. In DeGraw v. Kansas City and Leavenworth Transportation Co., 170 Kan. 713, 228 P.2d 527, 531, a man and his brother were both killed in a collision between their Ford truck and defendant's bus on a highway which was covered with ice. The widow and children of one of the deceased brought suit for his death. All the evidence showed that the truck was "obviously out of control", was skidding all over the highway, "and was over in the wrong lane", but that the bus continued to approach it at high speed and the collision occurred. It was there held that the fact that the truck was in the wrong lane through no negligence of its occupants, but was skidding and out of control because of the icy condition of the highway, imposed a duty on the part of the driver of the approaching bus, under the circumstances shown, to keep a vigilant lookout even for

vehicles which might be in the wrong lane of traffic. It will be noted that in that case there was evidence of justification or excuse for the act of the truck driver in permitting his truck to be in the wrong lane.

In the instant case, according to the plaintiff's evidence, the Linzy automobile in which he was riding, was never out of its proper lane, and that the ambulance left its proper lane and collided with the Linzy automobile on the west half of the highway. There was no evidence of any justification or excuse for defendant's ambulance to enter the west or wrong side of the highway, but, on the contrary, as stated, defendant's evidence is that it never left its proper lane.

■ Not only in Kansas but generally it is the rule that the violation of a statutory duty as here involved is negligence as a matter of law for the reason that the violation would be a failure to observe what the Legislature has prescribed as proper care to be exercised by a prudent person; that, however, even if such violation be negligence per se, no liability arises therefrom unless it forms a causal connection between it and the injury complained of. But such violation of a statute designed for the protection of persons and property, if shown to be the proximate cause of the injury, is deemed prima facie evidence of negligence, which may be rebutted by a showing of justification or excuse; otherwise, the presumption of negligence becomes conclusive. 65 C.J.S., Negligence, Sections 19b, 105, 204.

■ Assuming the truth of the facts submitted in the instruction, of which there was substantial evidence adduced by the plaintiff, and in the absence of any evidence justifying or excusing the defendant in permitting his ambulance to be in the wrong lane at the time and place of the collision, we believe that, under the laws of Kansas, such facts were sufficient to constitute defendant's negligence in the violation of the section of the Kansas statute pleaded, and of the fact that it

contributed to the ensuing accident or collision; and that, since the instruction further required the jury to find that as a "direct consequence of such negligence", plaintiff was injured while himself in the exercise of ordinary care, it properly called for a verdict for the plaintiff.

■ Since defendant makes claim that the submission of the ultimate fact of negligence was not sufficiently hypothesized as to essential facts, and cites the law of Missouri in support of that contention, as announced in Yates v. Manchester and Knight v. Richey, supra, we consider those cases in so far as they are applicable herein. We also note Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496, which further elucidates the issue in the Yates and Knight cases. In discussing those cases and the general principle involved, the court said in the Hooper case, supra, 260 S.W.2d at page 500: "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction. Any language found in Yates v. Manchester, supra, which may be construed contrary to the principles and rule above set forth should no longer be followed". As stated, the material facts in the instant case were not controverted except the one issue as to which automobile was in the wrong lane, and as to that fact issue, the instruction required the jury to find that the driver of the ambulance failed to continue on the east side of the highway, when it was of sufficient width to permit him to do so, but instead drove on the west or wrong side of the highway, and came into collision with the automobile in which plaintiff was a passenger. We

believe that the instruction was not faulty in failing more fully to hypothesize the facts required to determine the issue of negligence.

Finding no material error in the trial of the case, the judgment is affirmed.