No. 40,743

KATIE L. APPLEGATE, *Appellee,* v. HOME OIL COMPANY, a Corporation; FIREMAN'S FUND INDEMNITY COMPANY OF SAN FRANCISCO, CALIFORNIA; and LUTHER WALTON, *Appellants.*

(324 P. 2d 203)

Opinion filed April 12, 1958.

*James A. Williams,* of Dodge City, argued the cause, and *George B. Powers,* of Wichita, was with him on the briefs for appellants.

*John C. Frank,* of Wichita, argued the cause, and *Charles E. Rauh, Ralph J. Thorne* and *John A. Robinson,* of Hutchinson, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action for damages for personal injuries. The jury answered special questions and returned a general verdict for plaintiff. The defendants appeal from the orders of the trial court overruling their demurrer to plaintiff's evidence; their motion to strike answers to certain special questions; their motion for judgment on the special findings; their motion for a new trial, and from the order entering judgment for plaintiff.

On November 16, 1954, Charles F. Applegate was driving his automobile from Newton to Parsons, Kansas. Plaintiff, Katie L. Applegate, his wife, was riding in the front seat with him. They were proceeding east on State Highway 96 and about one and one-half miles east of the Fall River Junction in Greenwood County their car collided with the rear of defendant Home Oil Company's tractor-semitrailer parked on the highway over the top of a hill. Charles Applegate was killed and the plaintiff was severely injured. The day was clear, the sun was shining, there was some wind from the north, and the black top highway was dry. The terrain in that vicinity is hilly. The top of the hill is a plateau-like flat; the highway is practically level from the point of impact for a distance of more than 300 feet to the west and over 200 feet to the east, however there is a gradual slope to the east, and in leaving the plateau there is a steep downgrade. The highway is approximately twenty-five feet in width, and the shoulders are narrow with deep ditches on each side of the highway. Double yellow no-passing lanes were marked in the center of the highway over the top of the hill.

Approximately 7/10th of a mile west of the accident hill a vehicle traveling east passes over a smaller hill, down into an intervening valley and up a long incline to the plateau-like flat. A sign prohibiting trash dumping was on the right-hand side of the highway 580 feet west of where the collision occurred. Approximately 80 feet east of that sign and on the north side of the highway was an

entrance to a dump area and a second entrance was 50 to 100 feet west of the point of impact.

. A few minutes before the accident defendant Luther Walton, driver of defendant Home Oil Company's truck tractor and semi-trailer, approached the accident hill traveling east; Arthur Carnes, a helper, was with him. The semitrailer was empty. It was 28 feet long and had a red stock rack; the entire rig was 39 feet in length, seven feet eleven inches wide and slightly over nine feet high. The truck tractor was equipped with a five-speed transmission and a two-speed axle. Walton was on his way to Parsons to pick up oil drums. As Walton started up the hill and about 600 feet west of where the accident occurred he noticed his truck was starting to drag down. He shifted into low gear and the truck continued to drag. He shifted into the lowest gear before coming to a stop. He testified he smelled smoke that smelled like rubber burning, and in looking through the rear cab window he saw smoke coming from the right rear axle. He stopped on the right-hand side of the highway on top of the hill and he and Carnes got out. He went around to the right rear of the tractor to investigate; smoke was coming from the brake drum, but there was no fire. Walton crawled under the tractor and attempted to loosen the brake shoe with a screw driver. Thinking it sufficiently loose, he and Carnes got into the tractor and proceeded approximately ten feet, but the truck continued to drag. He stopped the second time on the south side of the highway with the right dual wheels at the edge of the pavement, turned the motor off and set the air brakes on the semi-trailer so the unit would not roll; the brakes were not set on the tractor. The rear of the semitrailer was approximately 300 feet east of the crest of the hill where it flattened out. It was a distance of six feet ten inches from the left rear wheels of the semitrailer to the center of the highway and twelve feet six inches from the center of the highway to the north edge, and nineteen feet and six inches from the left rear wheels to the north edge of the highway. The truck was facing straight down the highway in an easterly direction.

Walton got out of the cab the second time and went to the right rear of the tractor, crawled underneath in front of the wheels and proceeded to loosen the brake adjustment. Carnes also got out and walked a distance of 80 or 90 feet from the rear of the truck to warn traffic coming over the hill from the west. No flags, flares or other warning devices were put out by either Walton or Carnes.

Just before the collision Walton shouted to Carnes to come back. Carnes was walking toward the truck and was within thirty-five feet of it when he heard the scream of brakes. He testified he ran into the south ditch. However, he told a highway patrolman at the scene of the accident that he came back to the north side of the truck and was standing north of it when the accident occurred. When Walton heard the skidding car he rolled into the south ditch. Neither he nor Carnes actually saw the Applegate car.

Prior to the accident the Applegates encountered a large herd of cattle crossing the highway a short distance east of Fall River Junction, and reduced their speed; there were cars going east, cars going west, and cars in front and in back of their car. After getting through the herd Applegate resumed his speed. He rounded a slight curve and started down the small hill west of the accident hill. Defendants' parked truck could not be seen from the valley. On the way up the hill the truck still could not be seen. It was only when Applegate was over the crest of the hill that the truck was clearly visible. Applegate was traveling approximately 60 miles an hour. There is nothing in the record to show when Applegate first saw the truck and saw that it was stopped. After their car passed over the crest of the hill Mrs. Applegate exclaimed, "Oh, they are stopped." As Applegate proceeded east of the crest a car was seen coming from the east and a man was seen on the north side of the parked truck who made no signs or signals. Applegate applied his brakes and left skid marks on the highway; those made by the right wheels extended a distance of about 159 feet west of the point of impact and those of the left wheels extended 57 feet. The center of the front of the Applegate car struck the left rear corner of the semitrailer and went under it with sufficient force to largely demolish the right side of the Applegate car and move the left rear axle of the semitrailer forward on the frame one and one-fourth to one and one-half inches.

Within a few minutes following the accident two highway patrolmen arrived who measured the highway and skid marks and determined the location of the vehicles. Patrolman Dunkel testified he felt the right rear brake drum of the tractor and it was cool. After the wreckage was cleared away Walton and Carnes drove the truck to Fredonia, a distance of about fifteen miles. There was no evidence that anything had been done to the brake drum prior to the

truck being driven to Fredonia. When the truck was driven into his place of business, the garage mechanic did not observe any smoke coming from the brake drum.

On November 20, 1954, Walton entered his plea of guilty in the county court of Greenwood County to the charge of improperly parking the truck on the highway. He was fined by the court, which he paid.

The jury returned a general verdict for the plaintiff and made the following answers to special questions submitted by the court:

"1. At what distance west of the truck could plaintiff have first seen the truck?

"Answer: At the top of the first hill west of the accident. Approximately .7/10 mile away.

"2. At what distance west of the truck could the plaintiff have first seen the truck stopped upon the highway?

"Answer: Approximately 300 feet away.

"3. Where was the Applegate automobile when all of the truck, stopped on the highway, was clearly visible to the plaintiff?

"Answer: Approximately 300 ft. away.

"4. At what speed was the Applegate car traveling just before Charles Applegate applied his brakes?

"Answer: About 60 miles per hour.

"5. Under the circumstances existing at the time of the collision, what was the number of feet required for Charles Applegate to bring his car to a stop or under such control as to avoid the truck at the speed he was traveling?

"Answer: Approximately 160 feet after he applied his brakes.

"6. (a) Was there anything to prevent the Applegate car from passing safely to the north side of the truck?

"Answer: Yes.

"(b) If your answer to (a) is yes, state what prevented it?

"Answer: We believe according to testimony, that there was a man standing or walking somewhere near the truck and center line of the highway.

"7. Was the truck disabled so that it was necessary and proper for the driver to stop upon the highway?

"Answer: We agree that it might have been necessary to stop upon the highway, be [sic] we also believe that he did not park his truck properly. Therefore we do not believe it to have been proper.

"8. Were the defendants guilty of any negligence which was the proximate cause of the accident?

"Answer: Yes.

"9. If your answer to 8 is yes, specify the act or acts of such negligence?

"Answer: No attempt was made to comply with Rule 82-4-16, 15, (a) & (c) of State Corporation Commission of the State of Kansas as revised on June 16, 1951.

"10. At what distance from the truck did the plaintiff first warn her husband of the danger?

"Answer: Approximately 250 feet.

"11. State whether or not the proximate cause of the accident was the negligence of both the plaintiff and defendants?

"Answer: No."

Defendants moved the court that the jury be returned to the jury room to further answer special question No. 7, which was granted. The jury, through its foreman, returned the following additional answer:

"The reason that we feel it improper is: That according to testimony a truck driver can use his own discretion to interpret an emergency causing him to stop a truck. We feel that if such was the case his truck was not so disabled but that he could have found a more proper place to stop his truck, thereby reducing the hazard."

Defendants contend they are entitled to judgment on the special questions notwithstanding the general verdict in plaintiff's favor. In making the contention they conceded during oral argument that the jury convicted them of negligence in two respects; first, in failing to put out flags, flares or other warning devices in violation of rule 82-4-16, 15 (a) and (c) of the State Corporation Commission, and second, of improperly parking the truck on the highway. They assert that answers to special questions Nos. 2, 3, 4 and 5, and the undisputed evidence mathematically prove their negligence did not prevent Applegate from seeing the parked truck in time to stop or to otherwise avoid the accident. In short, they argue their negligence was not the proximate cause of plaintiff's injuries. Although the points set out in the first paragraph of this opinion were specified as error, defendants urge only the point last stated. Accordingly, specifications of error which are neither briefed nor argued are regarded as abandoned and upon appellate review will not be considered. (*Brent v. McDonald,* 180 Kan. 142, 300 P. 2d 396.)

In discussing defendants' contention we refer to the long-established rule that in considering answers to special questions the court is to give them, if possible, such a construction as will bring them in harmony with the general verdict (*Brown v. Utilities Co.,* 110 Kan. 283, 203 Pac. 907; *Witt v. Roper,* 149 Kan. 184, 86 P. 2d 549; *Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454), and in such a case the court is not permitted to isolate one answer and ignore other answers, but all are to be considered, and if one interpretation leads to inconsistency and another is in harmony with the general verdict, the latter is to be adopted. (*Marley v. Wichita Transportation Corp.,* 150 Kan. 818, 96 P. 2d 877; *Dick's Trans-*

*fer Co. v. Miller,* supra; *Brown v. Utilities Co.,* supra.) Another rule is that for the purpose of obtaining a ruling on a motion for judgment on answers to special questions notwithstanding the general verdict, the motion admits the findings to be true. (*Banbery v. Lewis,* 173 Kan. 59, 244 P. 2d 202, and cases cited therein; *Gladney v. Mills,* 177 Kan. 190, 277 P. 2d 631.) Another undisputable rule is that if a jury, in answer to a special question, finds one ground of negligence, such finding does not preclude reliance upon another ground alleged in the petition and fairly included in the answers to other questions submitted. (*Dick's Transfer Co. v. Miller,* supra, p. 577; *Witt v. Roper,* supra, Syl. ¶ 1; *Tritle v. Phillips Petroleum Co.,* 140 Kan. 671, Syl. ¶ 3, 37 P. 2d 996; *Rasing v. Healzer,* 157 Kan. 516, 522, 142 P. 2d 832.) It is likewise settled that mere violations of traffic laws are not themselves sufficient to make the operator of a motor vehicle guilty of actionable negligence in a collision of automobiles; to make him liable it must appear that the violation contributed to the collision and was a proximate cause of the injury sustained. (*Clark v. Southwestern Greyhound Lines,* 148 Kan. 155, 79 P. 2d 906; *Crawford v. Miller,* 163 Kan. 718, 186 P. 2d 116; *Ripley v. Harper,* 181 Kan. 32, 309 P. 2d 412.) In order for a plaintiff to recover damages for negligence of a defendant there must be some negligence which caused the injury for which damages are sought. (*Rasing v. Healzer,* supra.)

Plaintiff's contributory negligence was pleaded, but that question was resolved by the jury against the defendants by the general verdict and special finding No. 11. Nor is it contended that Applegate's negligence, if any, is imputable to the plaintiff. It is well settled that in a situation such as this, Applegate's assumed negligence cannot be imputed to plaintiff in such a way as to defeat recovery. (*Bradshaw v. Payne,* 111 Kan. 475, 207 Pac. 802; *Clark v. Railroad Co.,* 115 Kan. 823, 224 Pac. 920; *Schmid v. Eslick,* 181 Kan. 997, 317 P. 2d 459.) The defendants clearly state the issue in their brief: "Was the negligence of Luther Walton, as found by the jury, the proximate cause of the collision?"

The gist of defendants' contention is that the special findings as a matter of law established their negligence but it was not the proximate cause of plaintiff's injuries. They argue that Applegate's failure to stop or otherwise avoid the collision was the proximate cause, and since there can be only one proximate cause, the accident would not have occurred but for Applegate's negligence; conse-

quently, their negligence, as found by the jury, was not actionable. That conclusion does not necessarily follow.

It is well established in this jurisdiction that two or more events may combine to produce a result and both be a proximate cause. (*Street Rly. Co. v. Stone*, 54 Kan. 83, 37 Pac. 1012; *Pinson v. Young*, 100 Kan. 452, 164 Pac. 1102; *Acock v. Kansas City Power & Light Co.*, 135 Kan. 389, 10 P. 2d 877; *Tilden v. Ash*, 145 Kan. 909, 67 P. 2d 614.) It is not infrequent that the negligent acts of two or more persons may produce an injury to a third, and in such a situation the injured party may, at his option, sue any one or all of those whose negligence caused the injury. (*Wholesale Grocery Co. v. Kansas City et al.*, 115 Kan. 589, 593, 224 Pac. 47; *Nevitt v. Railway Co.*, 115 Kan. 439, 442, 223 Pac. 269; *McRae, Adm'r, v. Railroad Co.*, 116 Kan. 99, 225 Pac. 1032; *Stevens v. Jones*, 168 Kan. 583, 215 P. 2d 653.)

Generally speaking, where there is a question of the negligence of an actor, the causative element of his negligence, *i. e.*, the proximate or legal cause, is ordinarily a question for the jury. (*Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320, L. R. A. 1915 E 479, Ann. Cas. 1917 B 340; *Corley v. Railway Co.*, 95 Kan. 124, 147 Pac. 842; *Fraser v. Railway Co.*, 101 Kan. 122, 165 Pac. 831, L. R. A. 1917 F. 749; *Thummel v. State Highway Comm.*, 160 Kan. 532, 164 P. 2d 72, Syl. ¶ 3; *Rowell v. City of Wichita*, 162 Kan. 294, 301, 176 P. 2d 590.) It becomes a question of law only where the facts are agreed upon and not in dispute. (*Kendrick v. Atchison, T. & S. F. Rld. Co.*, 182 Kan. 249, 261, 320 P. 2d 1061.) The same rule is followed where the injury is the result of concurrent negligence. (38 Am. Jur., Negligence, § 352; *Durst v. Wareham*, 132 Kan. 785, 297 Pac. 675; *Richards v. Chicago, R. I. & P. Rly. Co.*, 157 Kan. 378, 139 P. 2d 427; *Kendrick v. Atchison, T. & S. F. Rld. Co.*, supra.)

In the many decisions dealing with negligence cases there are numerous definitions of the term "proximate cause." In *Rowell v. City of Wichita*, supra, this court, in defining proximate or legal cause, said:

". . . the proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred. . . .

". . . an additional condition sometimes stated being that it must appear the injury was anticipated *or that it reasonably should have been foreseen by the person sought to be charged with liability.* . . ." (l. c. 301, 302.) (Emphasis supplied.)

And it was further said:

". . . the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification *that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. . . ."* (1. c. 303.) (Emphasis supplied.)

As previously indicated there is nothing in the record to show when Applegate first saw the truck and saw that it was stopped. Nor was the jury specifically asked whether Applegate was negligent, and if he was, whether his negligence was the proximate cause of plaintiff's injuries. By looking only to those parts of the record and findings Nos. 2, 3, 4 and 5 indicating that Applegate could and should have stopped his car, an impressive case may be made out that he was negligent which was the proximate cause of plaintiff's injuries. Be that as it may, that conclusion involves ignoring large parts of the record and finding No. 7 convicting the defendants of improperly parking their truck upon the highway. The court instructed the jury on all phases of the law of negligence appropriate to the issues raised by the pleadings and to the facts and circumstances established by the evidence of both parties, and properly defined proximate cause which became the law of the case.

Whether the parking of the truck under the circumstances was warranted was a question of fact for the determination of the jury. In answer to question No. 7, and as amplified by its explanation, the jury determined the truck was not so disabled but that it could have been driven on to a proper place, thereby reducing the hazard. In answering the question the jury no doubt took into consideration the testimony of the highway patrolman that when he felt the brake drum following the accident it was cool, and also that Walton drove the truck without further repair some fifteen miles to Fredonia. The special finding established there was no excuse for parking on the highway; that a reasonably prudent driver would not have stopped the truck where it was stopped but would have sought a safer place. The stop was not a compelled stop as authorized by G. S. 1949, 8-570 (*b*), and Walton's improper parking constituted negligence as a matter of law. The question of defendants' negligence and of proximate cause was properly submitted to the jury, and we think it was proper for the jury to find that Walton's breach of a statutory duty contributed to and was the proximate cause of the accident in which plaintiff sustained her injuries.

If we construe special findings 2, 3, 4 and 5 as a finding of negligence on the part of Applegate, it would not be helpful to the defendants. The fact that Applegate was negligent does not relieve them of liability if they were negligent in a manner which was a proximate cause of the injury. (*McRae, Adm'r v. Railroad Co.,* supra; *Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924; *Strohmyer v. Ventura,* 178 Kan. 597, 290 P. 2d 1001.) Our decisions recognize there can be more than one legal or proximate cause of an accident. (*Neiswender v. Shawnee County Comm'rs,* 151 Kan. 574, 577, 101 P. 2d 226; *Stevens v. Jones,* 168 Kan. 583, 587, 215 P. 2d 653.) In *Taggart v. Yellow Cab Co. of Wichita,* supra, the court said:

"Both appellants insist if any liability was established, the proximate cause of the collision was the negligence of the other appellant. Both, therefore, seek to escape liability. They speak of proximate cause, which is probably more accurately termed 'legal cause' or 'the efficient and procuring cause.' (*Cole v. Shell Petroleum Corp.,* 149 Kan. 25, 37, 86 P. 2d 740.) In any event, neither of those causes nor 'degree of culpability,' is the yardstick by which liability of joint tortfeasors, to an innocent third party, is measured in actions such as this. *The measuring device is concurrent negligence.* It is apparent the acts of neither appellant alone would, or could, have caused the collision. Furthermore, the extent of injury occasioned by the negligence of each appellant is indivisible. *The real question is, therefore, whether the concurrent negligence of appellants contributed to the collision and resulting injury.*" (l. c. 96.) (Emphasis supplied.)

The negligence of which the defendants were convicted and to which they concede, that of Walton failing to put out warning devices and unlawfully stopping on the highway, did not, of itself, cause injury to the plaintiff. Neither did the manner in which Applegate drove his car upon the highway, in itself, result in injury to the plaintiff. What injured the plaintiff was a direct result of the combined negligence of Walton and Applegate. Although the jury found the defendants' negligence was the proximate cause of the injury, the question involved is one of concurrent negligence. The contention that Applegate's failure to stop or otherwise avoid the collision was responsible for the injuries is unavailing to the defendants for the reason that concurrent acts of negligence of joint tort-feasors contributed to bring about injury to the plaintiff. In such a situation the degree of culpability is immaterial (*Acock v. Kansas City Power & Light Co.,* 135 Kan. 389, 398, 399, 10 P. 2d 877; *Tilden v. Ash,* 145 Kan. 909, 67 P. 2d 614, Syl. ¶ 2; *Rowell v.*

*City of Wichita,* supra, p. 303; *Knox v. Barnard,* 181 Kan. 943, 317 P. 2d 452).

We have reviewed the record and find no sound basis to sustain defendants' claim that the special findings were inconsistent with the general verdict for the reason their negligence, as found by the jury, was not one of the proximate causes of plaintiff's injuries. Considered in their entirety, the special findings do not compel the setting aside of the general verdict against the defendants, and the trial court properly overruled that motion.

The judgment is affirmed.

JACKSON, J., not participating.